1  EAGAN AVENATTI, LLP
   Michael J. Avenatti, State Bar No. 206929
2  mavenatti@eaganavenatti.com
   Carlos Colorado, State Bar No. 231031
3  ccolorado@eaganavenatti.com
   520 Newport Center Drive, Suite 1400
4  Newport Beach, CA 92660
   Telephone: 949.706.7000
5  Facsimile: 949.706.7050

6

7  Attorneys for Plaintiff, Individually and On
   Behalf of All Others Similarly Situated

8

9             UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  GREG HERRICK, individually and on       CASE NO.:    16-6324
    behalf of all others similarly situated,
13
                        Plaintiffs,
14        vs.                                NATIONWIDE CLASS ACTION
15                                           COMPLAINT FOR BREACH OF
    NATIONAL FOOTBALL LEAGUE,                CONTRACT
16  NATIONAL FOOTBALL MUSEUM,
    INC. dba PRO FOOTBALL HALL OF            DEMAND FOR JURY TRIAL
17  FAME,
18                      Defendants.
19
20
21
22
23
24
25
26
27
28

Plaintiff Greg Herrick ("Plaintiff") brings this suit against the National Football League and the National Football Museum, Inc. dba Pro Football Hall of Fame (collectively, "Defendants") to recover the damages owed to him and others similarly situated.

## PARTIES

1.      Plaintiff Greg Herrick ("Herrick") is an individual and a resident and citizen of Los Angeles, California, and a purchaser of tickets to the 2016 Hall of Fame Game scheduled for Sunday, August 7, 2016 between the Green Bay Packers and the Indianapolis Colts (the "2016 Hall of Fame Game" or the "Game").  Herrick is a representative plaintiff for the "Cancelled Game Class" and "Cancelled Game California Subclass" defined below.

2.      Defendant National Football League (the "NFL") is an unincorporated association with four members in the State of California (including one within this District) and a principal place of business on Park Avenue in New York City, New York.

3.      Defendant National Football Museum, Inc. (the "Hall of Fame") is an Ohio corporation with its principal place of business in Canton, Ohio.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as the proposed class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from the defendant, and seeks in the aggregate more than $5,000,000, exclusive of costs and interest.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b) & (c) because a substantial part of the events or omissions giving rise to the claim occurred in this

judicial district, and because Defendants are subject to the Court's personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

**The NFL's History of Stadium Mismanagement.**

6.     The NFL unfortunately has a history of mismanaging the stadiums where its games are held.  For example, in 2011 the NFL held Super Bowl XLV and placed ticketholders in temporary seats with obstructed views.  Other ticketholders were unreasonably delayed, relocated or completely displaced from their seats as a result of the incomplete installation of temporary seats, which were deemed unsafe and unusable by the local fire marshal.  All of this occurred as a result of the NFL's mismanagement, misconduct and sheer incompetence.  As alleged herein, this conduct has continued despite the Super Bowl XLV debacle.

7.     The NFL also unfortunately has a history of scheduling games on unsafe playing surfaces.  Indeed, it was only in July 2016 that the NFL established the Field Surface & Performance Committee, a committee intended to provide guidance regarding the safety and performance of NFL surfaces.

**The Mismanagement of the 2016 Pro Football Hall of Fame Game.**

8.     The Pro Football Hall of Fame Game ("Hall of Fame Game") is an annual NFL exhibition game held during the weekend of the Pro Football Hall of Fame's induction ceremonies.  It is played at the Tom Benson Hall of Fame Stadium, adjacent to the Hall of Fame building in Canton, Ohio.  This game is highly anticipated, as it is the first game of the NFL's preseason.  Indeed, the TV ratings for this game routinely rival those of *playoff games* in other sports.  In fact, the 2015 game drew an estimated 11 million television viewers.  Tom Benson Hall of Fame Stadium has a capacity of approximately 22,000 seats and the Hall of Fame Game has historically sold out every year.

9.     The NFL has previously faced problems with the turf at the stadium, where Steelers kicker Shaun Suisham suffered a career-ending injury at the 2015 Hall of Fame Game.    Following that game, the stadium began to be reconstructed.    However, unbeknownst to fans travelling to see the 2016 game, reconstruction was not completed in time for the 2016 game.

10.    For the August 7, 2016 game between the Green Bay Packers and Indianapolis Colts, Defendants imported a used FieldTurf playing surface from the Superdome in New Orleans.  Further, Defendants caused decking to be constructed over the field for an August 5 Tim McGraw concert and the Hall of Fame induction ceremony on August 6.

11.    As Defendants knew but as fans would only later find out, as of the day of the game, insufficient seating had been installed for the number of ticket holders who would arrive that day, with entire sections of seats left unfinished.  This was in effect a replay of what transpired at Super Bowl XLV.

12.    Further, the decking that covered the field was not removed until 2:45 p.m. even though it was required to be removed by 8:00 a.m. Hours before the game was to start, the grounds crew, under the direction and supervision of Defendants, applied paint for the midfield logo and endzone lettering onto the field.  When the grounds crew determined the paint was not drying quickly enough, they heated the field to try to speed up the process.  Instead of rectifying the problem, this resulted in the melting of the rubber pellets that comprise the FieldTurf, creating a slick, sticky, and congealed mess.

13.    Approximately 2.5 hours before the game, the stadium workers applied a substance to remedy the problems with the field.  However, a Green Bay Packers employee noticed the substance's label warned of burns upon skin contact.  Then, as later recounted by Indianapolis Colts punter Pat MacAfee, players were "told to get the f*** off the field, like everybody off the field.  Everybody get off the field, everybody

get off the field.  So we go inside and Vinatieri, he's like an NFL PA executive member, so there's a lot of sh*t going on, with the NFL PA saying, Hey listen, if that field tore an ACL last year, ruined a guy's career last year, they tried to fix the field but if that field isn't good, then you guys can't be playing on this sh*t, right?  And it wasn't just the NFL PA, it was the medical doctors from both teams.  The guy that did my knee surgery was on the field saying no f***ing way ... Everybody was all in with no way this is happening."

14.     Despite it being clear the game would be cancelled, Defendants continued to maintain a façade of normality for fans and the general public.  As McAfee stated, "They let everybody into the stadium before telling them it was going to be cancelled."  In fact, the President of the Hall of Fame David Baker entered the Colts' locker room and, according to McAfee, stated "If you ever need anything from us because we did this, let us know."  Even though the Colts and Packers, together with the NFL's broadcast partner ESPN, were told the game had been cancelled between 6:00 and 7:00 p.m., Defendants purposely told the fans nothing.  Instead, the scoreboard continued to tick down to an 8:00 p.m. kickoff that never happened.

15.     In addition to failing to inform fans that the game would be cancelled, Defendants purposely took affirmative steps to keep the fans in the dark.  McAfee reported that "we weren't allowed to tweet after we found out that the game was cancelled, we weren't allowed to make the announcement.  It was kind of hush-hush…there was a big no tweeting policy, nobody's allowed to say sh*t."

16.     On information and belief, by design, Defendants allowed and encouraged fans to continue to purchase food, beverages, and souvenirs at the stadium as they waited for a game that would never start.  And Defendants did so in the interest of money.

17.     It was not until approximately 8:00 p.m. that Hall of Fame President David Baker finally told the fans, many of who had travelled from around the country, that the game was cancelled.

**NFL Officials Purport to "Admit Responsibility"**

18.  On August 9, 2016, under increasing public pressure, Executive Vice President Troy Vincent sent a memo to the NFL teams wherein he admitted the NFL was responsible:  "While the HOF field situation underscored the challenges in working with third parties, ultimately I am accountable for ensuring the field is of the highest standard." He also added that the league's football operations department "must demand and expect an extra level of detail in adhering to NFL standards ... for non-club fields."

19.  In addition, following the cancellation, Colts owner Jim Irsay was quoted as saying:  "This shouldn't happen . . . .  It's not difficult. Obviously everyone out there says, 'Hey you're a $12 billion league. How could you not have a field out there ready to go?' Well, the Hall of Fame is sort of separate and gets run a little differently from the league. But ... as owners, we'll have to get it right so it never happens again.

**Fans suffer significant damages.**

20.  As a direct result of the incompetence of Defendants, Plaintiff and similarly situated fans have suffered damages including but not limited to:  (1) the out-of-pocket cost of the tickets to attend the game; (2) lodging and travel expenses to attend the game; (3) costs associated with items purchased on the day of the game, including but not limited to items purchased while Defendants purposely concealed the fact that the game had already been cancelled; and (4) missed hours and days of employment for certain fans who took vacation to attend the game.

21.  For example, Plaintiff Herrick travelled from California with his wife to the game and paid $1000 to acquire two tickets.  He also incurred travel expenses to attend the game and made purchases before the game was cancelled at 8:00.

## CLASS ACTION ALLEGATIONS

22.  Plaintiff brings this action on his own behalf, and as a class action on behalf of the Classes defined herein, pursuant to, and properly maintainable under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3).  The Classes consists of thousands of

ticket holders to the 2016 Hall of Fame Game victimized by Defendants' breach of contract.  Specifically, Plaintiff brings this suit on behalf of the following Classes:

> **The "Canceled Game Class"**:  All persons who paid for and/or acquired tickets to the 2016 NFL Hall of Fame Game. The class excludes counsel representing the class and all persons employed by said counsel and/or who attended the game at the invitation of counsel, governmental entities, the NFL, any entity in which the NFL has a controlling interest, the NFL's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other class members.

> **The "California Cancelled Game Subclass"**:  All persons who paid for and/or acquired tickets to the 2016 NFL Hall of Fame Game while residing within the state of California.  The class excludes counsel representing the class and all persons employed by said counsel and/or who attended the game at the invitation of counsel, governmental entities, the NFL, any entity in which the NFL has a controlling interest, the NFL's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other class members.

23.    The NFL subjected Plaintiff and each of the respective Classes to the same wrongdoing and harmed them in the same manner.  Now, Plaintiff and each of the respective Classes seek to enforce the same rights and remedies pursuant to the same legal theory: breach of contract.

24.    Numerosity:  The proposed classes are so numerous that individual joinder of all their members is impracticable.  While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  It is estimated that the "Canceled Game Class" consists of over 22,000 members.  It is estimated that the "Cancelled Game California Subclass" contains far in excess of 100 members.  The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

25.    Typicality:  Plaintiff's claims are typical of the claims of his respective Classes in that his claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and is based on the same legal theory as their claims.

26.    Adequacy of Representation:  Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Undersigned counsel has substantial experience in prosecuting complex lawsuits and class action litigation.  Plaintiff and undersigned counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so.  Neither Plaintiff nor his counsel have any interests adverse to the Classes.

27.    Superiority of Class Action and Impracticability of Individual Actions:  Plaintiff and the members of the Classes suffered harm as a result of the NFL's unlawful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Individual joinder of all members of the Classes is impractical.  Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the

individual litigation would proceed.   Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by the NFL's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class Members.   Adjudication of individual Class Members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class Members to protect their interests.

28.   <u>Common Questions of Law and Fact Predominate</u>:   In addition, the requirements of Federal Rule of Civil Procedure 23 are satisfied by questions of law and fact common to the claims of Plaintiff and of each member of the Classes and which predominate over any question of law or fact affecting only individual members of the Classes.  Common questions of law and fact include, but are not limited to, the following:

a.   The questions of law and fact common to the Cancelled Game Class include the following:  (i) were members of the Cancelled Game Class entitled to watch the 2016 Hall of Fame Game?; (ii) was the cancellation of the game a breach of contract under the ticket contract?; and (iii) are members of the Cancelled Game Class entitled to damages for breach of contract?

b.   The questions of law and fact common to the Cancelled Game California Subclass include the following:  (i) were members of the Cancelled Game California Subclass entitled to watch the 2016 Hall of Fame Game?; (ii) was the cancellation of the game a breach of contract under the ticket contract?; and (iii) are members of the Cancelled Game California Subclass entitled to damages for breach of contract?

29.     Notice: Notice can be provided via internet publication, published notice and/or through mail and paid for by the NFL.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT
### (By all Plaintiffs Against the Defendants)

30.     The allegations of paragraphs 1 through 29 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the classes of similarly situated ticket holders.

31.     Tickets to the Hall of Fame Game were originally sold to the fans, putative members of the classes and Plaintiff by Defendants.

32.     Accordingly, Plaintiffs entered into an agreement with Defendants whereby Plaintiffs were sold tickets for seats to the Hall of Fame Game on August 7, 2016.  These tickets comprise valid and enforceable contracts entitling all Plaintiffs to watch the game.

33.     Plaintiffs fully and properly performed all conditions, covenants, and acts required to be performed on their part in accordance with the terms and conditions of the ticket purchases.

34.     Defendants breached their obligations under the agreement to the "Cancelled Game Class" by cancelling the game due to factors under their control.

35.     As a direct and proximate result of the NFL's breaches, Plaintiffs have sustained damages including, but not limited to:  (1) the out-of-pocket cost of the tickets to attend the game; (2) lodging and travel expenses to attend the game; (3) costs associated with items purchased on the day of the game, including but not limited to items purchased while Defendants purposely concealed the fact that the game had already been cancelled; and (4) missed hours and days of employment for certain fans who took vacation to attend the game.

36.     Defendants acted in bad faith and acted vexatiously, wantonly, obdurately, and oppressively in connection with the game.  Because of the NFL's history of incompetent stadium management, Defendants knew or should have known that they needed to closely supervise stadium setup to ensure the stadium was ready in time.  In addition, Defendants knowingly and intentionally failed to timely inform class members that the game would be cancelled even though they had already informed the Colts and Packers (and presumably TV executives) about the cancellation hours earlier.

37.     On information and belief, by failing to inform class members of the game's cancelation, Defendants purposely ensured they received significant profits from the sale of concessions and souvenirs purchased by class members as they waited in anticipation for the kickoff of a game that would never occur.  Defendants were in fact on notice that the stadium was ill-prepared to host the game shortly after 8:00 a.m., if not earlier, when the decking covering the field should have been removed.  The delay in removing the decking resulted in a delay in in painting the field and ultimately resulted in cancellation of the game.  Had Defendants notified class members about the game's cancellation well before the scheduled kickoff, class members could have mitigated their damages.  Instead, Defendants chose to proceed under the façade of normality, allow fans into the stadium, and reap profits on the sale of concessions and souvenirs from their captive audience.

38.     All conditions proceeding to Plaintiffs' claims for relief have been performed or have occurred.

39.     Plaintiffs seek to recover actual damages outlined below from the Defendants as a direct and proximate result of the unlawful conduct of the NFL.

40.     Plaintiffs will show that Defendants acted in bad faith, vexatiously, wantonly, obdurately, and/or oppressively and will therefore seek to recover attorneys' fees.

NATIONWIDE CLASS ACTION COMPLAINT

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

3

41.     Plaintiffs seek to recover the following damages and obtain the following

4

relief from Defendants:

5

          (a)     Economic loss and damages suffered by Plaintiffs;

6

          (b)     All reasonable and necessary attorneys' fees;

7

          (c)     Court costs;

8

          (d)     Pre and post-judgment interest

9

          (e)     And such other relief to which Plaintiffs may show themselves justly

10

                entitled.

11

12

Dated:  August 23, 2016               EAGAN AVENATTI, LLP

13

14

                       By:       /s/ Michael J. Avenatti

15

                             Michael J. Avenatti
                             Attorneys for Plaintiffs

16

17

**<u>JURY DEMAND</u>**

18

19

Plaintiffs hereby demand a trial by jury on all issues so triable.

20

21

Dated:  August 23, 2016               EAGAN AVENATTI, LLP

22

23

24

                       By:       /s/ Michael J. Avenatti

25

                             Michael J. Avenatti
                             Attorneys for Plaintiffs

26

27

28

**NATIONWIDE CLASS ACTION COMPLAINT**