**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CARMELO TREVISO,** | ) | **CASE NO.1:17CV472** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **NATIONAL FOOTBALL MUSEUM, INC.,** | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Carmelo Treviso's Motion for Class Certification. (ECF # 102). For the following reasons, the Court denies Plaintiff's Motion.

On August 23, 2016, Plaintiff Greg Herrick, on behalf of himself and a putative class, filed this action with the United States District Court for the Central District of California against the National Football League ("NFL") and the National Football Museum, Inc. d/b/a the Pro Football Hall of Fame. Plaintiff purchased a ticket to attend the Hall of Fame Game set for August 7, 2016 in Canton, Ohio between the Green Bay Packers and the Indianapolis Colts. Due to the alleged mismanagement of Defendants, the game was cancelled on the very day the game was set to be played, causing injury to Plaintiff and the putative class. Class

discovery is complete and Plaintiff has dismissed his claims against the NFL.  On March 16, 2018, Plaintiff filed a First Amended Complaint substituting a new class representative, Carmelo Treviso.

In his First Amended Complaint for Breach of Contract, Treviso, a resident of Wisconsin, alleges he purchased a ticket to the 2016 Hall of Fame Game.   Plaintiff alleges the Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, ("CAFA") 28 U.S.C. 1332(d) as the purported class exceeds 100 members and their damages, in aggregate, exceed $5,000,000.  Venue is proper as Defendant resides in the Court's judicial district and the events giving rise to the claims occurred therein.

The Pro Football Hall of Fame Game is an annual exhibition game held in Canton, Ohio on the weekend of the Pro Football Hall of Fame's induction ceremonies.  It is played in the Tom Benson Hall of Fame Stadium, located adjacent to the Canton Pro Football Hall of Fame Museum.   The turf at Benson Stadium had caused injuries resulting in reconstruction of the stadium and its field.  However, reconstruction was not completed in time for the 2016 Hall of Fame game.  A used field was imported from the Superdome in New Orleans to be used for the game.  Decking was constructed on the field for a concert to be held two days prior to the game.  Defendant failed to inform fans that the field construction was incomplete at gametime with whole sections of seating left uninstalled.  There was not enough seating to accommodate the number of tickets purchased.  Nor was the decking removed from the field until 2:45 p.m.  The ground crew was left with little time to prepare the field as a result.  They painted the midfield logo and endzone lettering but left insufficient time for it to dry before the game began.  To speed the drying process the ground crew heated the field, resulting in

melting the rubber pellets comprising the turf, creating a slick, sticky, congealed mess.

With two and a half hours to go before the start of the game the crew applied a substance to remedy the problems with the field, however a Green Bay Packer employee noticed that the substance contained a warning that contact with skin would result in burns. It was then that the players were ordered off the field. The team doctors and NFL Players Association representative all advised against playing on the field. No one informed the ticket purchasing public that the game would be cancelled until fans were inside the stadium. Defendant failed to report the cancellation for one to two hours after they knew it was to be cancelled. This was by design so fans would purchase food, drink and souvenirs at the stadium as they waited for the game. Finally, at 8:00 p.m. fans were told the game was cancelled.

According to Plaintiff's First Amended Complaint, fans suffered damages including: out of pocket ticket costs, lodging and travel expenses, food and souvenir purchases and missed employment time.

Plaintiff brings a single claim for Breach of Contract on his own behalf and on behalf of a nationwide class of similarly situated ticket holders defined as:

> The "Canceled Game Class":  All persons who paid for and/or acquired tickets to the 2016 NFL Hall of Fame Game. The class excludes counsel representing the class and all persons employed by said counsel and/or who attended the game at the invitation of counsel, governmental entities, the NFL, any entity in which the NFL has a controlling interest, the NFL's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other class members.

Plaintiff seeks economic loss damages, reasonable attorneys' fees, court costs, pre and

post judgment interest and all other relief to which they are entitled.

**Plaintiff's Motion for Class Certification**

Plaintiff seeks to certify a nationwide class under Fed. R. Civ. P. 23(b)(3) made up of people who paid for and/or acquired tickets to the game. In the alternative, Plaintiff seeks to certify a liability class under Fed. R. Civ. P. 23(c)(4) to determine whether Defendant breached its contracts with ticket holders by cancelling the game.

Plaintiff's Class Certification Motion seeks to certify the above defined class of ticket purchasers who purchased their game tickets in one of five versions, 1) a commemorative ticket, 2) a thermal ticket, 3) the Etix ticket, 4) the print-at-home ticket and 5) the mobile ticket. These tickets formed a contract between the purchaser and Defendant wherein, according to Plaintiff, purchasers paid money for the seats to the game in exchange for Defendant providing them a game to watch. The material terms of each of the above five types of tickets are the same. None of the tickets absolved Defendant from liability to pay legal damages if it cancelled the game nor do the tickets limit the types of damages recoverable for breach.

Plaintiff's damages expert, Dr. Justine Hastings, an economist, has opined that she can calculate classswide aggregate expenses in each of three categories of damages (tickets, lodging, travel).

Defendant opposes certification, contending that individualized inquiries are necessary to determine the validity of each class member's claim for breach of contract and damages. There were several different types of tickets purchased for the 2016 HOF game with varying terms and conditions. Based on the fact that some tickets contained exculpatory

4

language, an individualized inquiry into the type of ticket purchased would be necessary to determine if a putative class member were, in fact, a member of the class as defined by Plaintiff.  Furthermore, Defendant contends that any determination of damages would necessarily require individual inquiry as the particular categories of damages -i.e. ticket prices, travel expenses and lodging expenses, which vary widely across the class and are largely dependent on the distance a putative class member traveled to the game and the mode of transportation used by the ticket holder to arrive at the game.  Because these vary widely, they would require separate individualized inquiries, militating against a finding that a class action would be the superior method for resolving these claims.

Defendant also contends that almost ninety percent of the putative class has already settled their claims with Defendant by accepting Defendant's settlement offer, which included a refund of the face value of tickets as well as the processing, shipping and handling fees, pre-paid parking purchased through Defendant, pre-sale reservation fees and one night of hotel accommodations to eligible fans subject to review, certification and approval.  It further offered four Hall of Fame Museum tickets, a 30% discount on Hall of Fame store merchandise, a commemorative photo of the Hall of Fame Class of 2016 and a 2016-2017 Hall of Fame Yearbook.  All this was offered in exchange for a release by the ticket holder of all claims arising from cancelling the game.  Because the putative class has positively responded to Defendant's offer with the large majority accepting its terms, the Court must find that class certification is not the superior method.   According to Defendant, of the approximately 22,000 tickets sold, nearly 19,000 ticket purchasers have accepted Defendant's reimbursement offer.

Defendant further contends Treviso cannot adequately represent the class because he lacks generalized knowledge of the case. On deposition Treviso represented he had not met Plaintiff's counsel, is not familiar with local Ohio counsel, did not know there was a prior named plaintiff, did not know Plaintiff's expert and did not know what other damages putative class members may seek. This lack of generalized knowledge of the case renders Treviso inadequate to act as the class representative.

Finally, Defendant contends bifurcation and/or certification of a liability only class are inappropriate because the highly individualized damages inquiries would necessitate thousands of mini-trials rendering the superiority of class action meaningless as it will do little to streamline the litigation.

## LAW AND ARGUMENTS

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " *Wal–Mart Stores, Inc. v. Dukes,* ––– U.S. ––––, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (citation and internal quotation marks omitted). "To be certified, a class must satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b)." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 537 (6th Cir. 2012) citing *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998) (en banc). "The party seeking class certification has the burden to prove the Rule 23 certification requirements." *Young,* 693 F.3d

at 537.  "In order to certify a class, the Court must consider the factors of Fed. R. Civ. P. 23(a) and at least one of the factors of Fed. R. Civ. P. 23(b)." *Id.*

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Dukes,* 131 S.Ct. at 2551.  "Such compliance must be checked through a 'rigorous analysis.'" *Id.* (quoting *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

Fed R. Civ. P. 23(a) reads:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

**(1)** the class is so numerous that joinder of all members is impracticable;

**(2)** there are questions of law or fact common to the class;

**(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

**(4)** the representative parties will fairly and adequately protect the interests of the class.

A prerequisite to the Rule 23(a) is a finding by the Court that the putative class is sufficiently defined.  In *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537-38 (6th Cir. 2012) the Sixth Circuit held,  "For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.  Here, Plaintiff defines the class as:

The "Canceled Game Class":  All persons who paid for and/or acquired tickets to the 2016 NFL Hall of Fame Game. The class excludes counsel representing the class and all persons employed by said counsel and/or who attended the game at the invitation of counsel, governmental entities, the NFL, any entity in which the NFL has a controlling interest, the NFL's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual

whose interests are antagonistic to other class members.

Plaintiff alleges the class may be identified by proof of purchase of the tickets. Thus, according to Plaintiff the class is easily identifiable.

While true that the class can be identified by proof of ticket purchases, its broad scope necessarily includes those ticket purchasers who subsequently accepted Defendant's reimbursement offer in exchange for a release of all claims against Defendant arising from cancelling the 2016 HOF game. Those releases preclude the vast majority of ticket purchasers (19,000 ticket purchasers who accepted the Defendant's reimbursement offer in exchange for releasing their claims, out of a putative class of 22,000) from inclusion in the class definition. Therefore, the class definition as presently drafted must be rejected. This alone does not defeat class certification as the Court may modify the class definition. See *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.,* 302 F.R.D. 448, 462–63 (N.D. Ohio 2014) (The Court's duty to ensure that Rule 23 prerequisites are met "includes the obligation to create a new [class]definition *sua sponte* if the parties' own proposals are not adequate or accurate."). Any class definition would require the exclusion of the class members that accepted the Defendant's reimbursement offer. Thus, this factor weighs against certification of the class as presently defined.

**<u>Numerosity</u>**

Although the Court may consider class size, geographic distribution of members and the ability of class members to pursue individual litigation, forty or more members is generally sufficient to meet the numerosity requirement of Rule 23(a). See *Krieger v. Gast, et al.,* 197 F.R.D. 310, 314 (W.D. Mich 2000), *Consolidated Rail Corp. V. Town of Hyde Park,*

47 F.3d 473, 483 (2nd Cir. 1995)  Typically, this Court has held that 40 or more members satisfies the class requirement.  Plaintiff alleges there were approximately 22,000 tickets sold for the game.  As discussed above, 19,000 ticket holders accepted the Defendant's reimbursement offer.  Even so, the putative class size would still number approximately 3,000, easily meeting the numerosity threshold.

**Common Questions of Law and Fact**

To satisfy this requirement the Sixth Circuit described the necessary analysis to determine commonality:

> The commonality requirement deals with shared questions of law or fact. Although Rule 23(a)(2) speaks of "questions" in the plural, we have said that there need only be one question common to the class. (Citation omitted). It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation.

*Sprague,* 133 F.3d at 397.  See also *Dukes,* 564 U.S. at 359.  ("We quite agree that for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do..." (Internal citation omitted).

Plaintiff contends the class is made up of those who purchased or obtained tickets to the subsequently cancelled 2016 Hall of Fame Game.   Plaintiff's theory is that Defendant breached the contract by cancelling the game.  The legal determination of this single issue will determine the success or failure of each class member's claim.

Defendant points the Court to the fact that there was not a single ticket type purchased for the game but instead the parties identify five different ticket types issued.  These tickets

contain unique and distinct terms and conditions as well as disclaimers. The following chart

demonstrates the varying representations per type of ticket purchased:

| TICKET TYPE | TICKET LANGUAGE |
|---|---|
| 1. Commemorative Ticket | Front: "**NO EXCHANGE – NO READMITTANCE – NO REFUND**." FOR ANY REASON." |
| 2. Thermal Ticket | Holder of this ticket voluntary assumes all risks and danger incidental to the event for which this ticket is issued whether occurring prior to, during or after same and agrees that the organization, venue, presenter, agents, participants, staff or players are not responsible or liable for any injuries resulting from such causes. * * * **ABSOLUTELY NO REFUND OR EXCHANGES FOR ANY REASON.**" |
| 3. Etix Ticket | "This ticket is a revocable license and may be taken up and admission refused upon refunding the purchase price appearing hereon is grounds for seizure and cancellation without compensation. Holder of this ticket voluntarily assumes all risks and danger incidental to the game or event for which this ticket is issued whether occurring prior to, during, or after same and agrees that the organization, venue, presenter, agents, participants, players, or ETix are not responsible or liable for any injuries resulting from such causes." |
| 4. Etix Print-at-Home Ticket | "CANCELLED OR POSTPONED EVENTS: Etix will issue refunds ONLY if an event is canceled in its entirety. Refunds for rescheduled events will be provided only with the venue's or promoter's approval. If an event is canceled and not rescheduled, refunds will automatically be applied to the credit card used by the customer at the time of purchase." |
| 5. Etix Mobile Ticket | "CANCELLED OR POSTPONED EVENTS: Etix will issue refunds ONLY if an event is canceled in its entirety. Refunds for rescheduled events will be provided only with the venue's or promoter's approval. If an event is canceled and not rescheduled, refunds will |

automatically be applied to the credit card used by the
customer at the time of purchase."

Plaintiff argues that the language of the varying tickets is sufficiently similar such that a breach of one ticket type would be a breach of all and therefore, he can show commonality. The Court agrees that each putative class member purchased a ticket to see the 2016 HOF Game and Defendant cancelled the game. Therefore, each ticket holder regardless of ticket type purchased would be able to assert a breach of contract claim arising from the same set of facts. Therefore, Plaintiff can show commonality.

**Typicality**

The Sixth Circuit in *Sprague* stated: "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.... A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Sprague* at 399, quoting *In re American Med. Sys., Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996).

Typicality and commonality are often analyzed together. Class representative Treviso's claim is identical to that of the class as both arise from Defendant's alleged uniform breach of the ticket contract. However, Treviso's claims are not typical of all ticket purchasers given the distinct ticket terms, conditions and disclaimers. Those ticket holders with tickets containing broad disclaimers may be subject to different defenses than those whose tickets contained no disclaimers. Second, because the majority of the putative class

has accepted Defendant's reimbursement offer and signed releases, Treviso's claim is not typical of the majority of the class.  See *In re Nortel Networks Corp.,* No. 3 MD 1537, 2009 WL 3294827, *17 (Sept. 2, 2009) ("including subset of Plan Participants who signed Release Agreements would also defeat typicality.").  As the Sixth Circuit has held, "the premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague,*133 F.3d at 399.  In *Sprague,* the Sixth Circuit cited favorably the denial of certification in *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir.1993) wherein the Seventh Circuit found that typicality was not present where different groups of class members received different representations.  The Court holds the same applies here where different ticket holders were provided different terms and conditions. At a minimum it would require sub classes based on the type of ticket purchased, however, Plaintiff cannot demonstrate typicality with the class as presently defined.

**Class Representative**

The named plaintiff must fairly and adequately represent and protect the interests of the class.   In *Rutherford v. City of Cleveland,* 137 F.3d 905, 909 (6th Cir. 1998), the Sixth Circuit, quoting the United States Supreme Court in *Amchem Prods., Inc., v. Windsor,* 521 U.S. 591 (1997) stated: "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  The Sixth Circuit went on to say, " Accordingly, to satisfy the adequate representation requirements under Rule 23... there must be an absence of a conflict of interest, and the presence of common interests and injury."  *Id.*  "Courts analyzing Rule

23(a)(4)'s adequacy of representation requirement must consider two criteria: (1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representative[ ] will vigorously prosecute the interests of the class through qualified counsel." *Willis v. Big Lots, Inc.,* 242 F. Supp. 3d 634, 648 (S.D. Ohio 2017).

Plaintiff Carmelo Treviso is proposed as class representative of the putative class of ticket purchasers.  He purchased two tickets to the Game to attend with his son.   He paid $168.50 for two tickets along with travel expenses to travel to Ohio, which include $365.81 for two nights at a hotel.  He drove to Cleveland from Wisconsin, the cost of which was $544.32.  Thus, his aggregate damages were $1,078.00.   Therefore, according to Plaintiff, he can show he suffered the same injuries as the putative class.  Nor is there any conflict of interest that the Court has been made aware of.

According to Defendant, Treviso is an inadequate class representative because he knows little about the case.  Treviso lacks even general knowledge about the case.  He has never met Mr. Avenatti, the proposed class counsel, and is unfamiliar with Ohio counsel, the Becker Law Firm.  He did not know that Greg Herrick was the previously-named class representative, does not know the damages expert and does not know what type of damages other class members may seek.

Defendant further contends that by seeking a class action in light of the reimbursement package offered by the NFL Museum, Plaintiff and his counsel in pursuing this suit have evidenced they are more interested in costly litigation than what is the best recovery for the class.

The Court finds there is no evidence of a conflict of interest and Treviso shares the same interests as the putative class. As Defendant asserts, "a court may deny class certification when class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Ross v. Abercrombie & Fitch Co., 257 F.R.D. 435, 451 (S.D. Ohio 2009).* However, at this stage of the proceedings the Court finds Treviso has thus far adequately represented the class and vigorously prosecuted through counsel the claim on behalf of the class. There appears no defenses unique to Treviso that would potentially harm the litigation. Thus, the Court finds Plaintiff meets the Rule 23(a)(4) requirement.

**Common issues predominate**

To obtain class certification Plaintiff must not only satisfy the requirements of Rule 23(a), but one of the requirements of Rule 23(b) as well. Here, Plaintiff asserts he can meet Rule 23(b)(3) because common questions of law or fact predominate over individual claims. Rule 23(b) reads in pertinent part:

A class action may be maintained if:

Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

**(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

**(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their

14

ability to protect their interests;

**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

**(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

**(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

**(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

**(D)** the likely difficulties in managing a class action.

Treviso contends the proposed class satisfies the R. 23(b)(3) requirements where there are common questions concerning Defendant's alleged failure to provide the contracted for game as required under the terms of the ticket purchase.  It is a straightforward question that forms the very heart of the dispute and the same ticket contracts apply without variation, thus, common contract interpretation principles will govern this issue as it will be an all or nothing determination.  Either every ticket purchaser's contract was breached, or it was not when the game was cancelled.

Treviso also claims common issues of damages predominate.  Although the amount of damages will vary from person to person, the type of damages will all be uniform in ticket costs, travel and lodging and the presence of individualized damages will not defeat class certification.

In the alternative, Plaintiff asks the Court to certify a liability only class should the Court find damage determinations to be too individualized.

According to the Defendant, individual inquiries into each ticket purchaser's ticket language and damages defeats predominance. There are five different types of tickets that were purchased by ticket holders to the Hall of Fame Game that was subsequently cancelled. According to Defendant, these tickets each contained separate terms and conditions. The commemorative, thermal and Etix had terms and conditions printed on the physical ticket while the tickets bought online were subject to Etix terms and conditions. Some contained exculpatory language such as the one purchased by Treviso, which stated it was a revocable license. Defendant's 30(b)(6) representative confirmed that tickets had disclaimer language that varied by ticket type. Pages 9 and 10 of Defendant's opposition brief contain a chart of the varying disclaimer language found on each type of ticket. Thus, highly individualized inquiries will be needed to determine the type of ticket purchased and what exclusions or disclaimers were made.

Likewise, each putative plaintiff's damages will require highly individualized inquires concerning what transportation they used, whether the ticket was purchased on the primary or secondary market, where and when did they stay for the game among other inquiries.

Neither has Plaintiff formulated an acceptable methodology for determining damages. Plaintiff's expert, Dr. Justine Hastings, Professor of Economics and International and Public Affairs at Brown University, has submitted three reports, all of which are subject to Defendant's pending Motion to Strike. Hastings' proposed damages model does not account for merchandise purchased, concessions or time off work, all of which are damages Plaintiff

alleges the class is entitled to recover.  Furthermore, each individual class member will need to submit proof of their damages.  Hastings' model estimates travel expenses by a class members' zip code, assuming every class member drove or flew.  It does not account for bus, train or other modes of transportation.  It does not account for ticket prices on the primary versus secondary market where tickets on the secondary market are routinely more expensive.

**NFL Museum's reimbursement package is superior**

Defendant contends its reimbursement package is superior to Plaintiff's class action as it offers face value refunds of ticket purchases along with shipping and handling fees; refunds for HOF parking, refunds for one night hotel lodging up to $289, four HOF Museum tickets, 30% discount on HOF merchandise, 2016 HOF class commemorative photo and yearbook and the right to purchase before the general public one future HOF Enshrinement Ceremony and Game ticket for one of the next four ceremonies or games.  To date, more than 19,000 of the 22,000 ticket purchasers have accepted the reimbursement deal.  While it does not offer all compensation Plaintiff seeks, the NFL Museum's reimbursement offer is superior when compared to the cost, time and vagaries of a class action.  Thus, it is superior to a class action.

**Damages**

Plaintiff's First Amended Complaint alleges damages, including 1) "the out-of-pocket cost of the tickets to attend the game and (2) lodging and travel expenses to attend the game; (3) costs associated with items purchased on the day of the game, including but not limited to, items purchased while Defendants purposely concealed the fact that the game had already been cancelled; and 4) missed hours and days of employment for certain fans who took

vacation to attend the game." (FAC pg. 5).

The First Amended Complaint alleges a single claim for breach of contract. While the tickets are silent as to choice of law, "[A] federal court in a diversity case applies the law of the state in which it sits." *Jim White Agency Co. v. Nissan Motor Corp.,* 126 F.3d 832, 835 (6th Cir.1997). On March 6, 2017, the California Court where this case was originally filed transferred it to this Court because California lacked personal jurisdiction over Defendant. The Supreme Court of Ohio has adopted the *Restatement of Law (Second), Conflict of Laws,* Section 187 in applying the choice of law provisions in contracts. *Schulke Radio Productions, Ltd. v. Midwestern Broad. Co.,* 6 Ohio St.3d 436, 453 N.E.2d 683, 686 (1983). If there is a dispute as to which law governs, Section 188 of the *Restatement* determines which law applies. Under Section 188, the Court should consider: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Ohayon v. Safeco Ins. Co. of Ill.,* 91 Ohio St.3d 474, 747 N.E.2d 206, 209 (2001). The law of the state with the "most significant relationship" to the transaction and the parties applies. *Restatement (Second) of Conflict of Laws* § 188. *Transportation Ins. Co. v. Busy Beaver Bldg. Centers, Inc.,* 969 F. Supp. 2d 875, 883 (S.D. Ohio 2013). "A breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." *Spectrum Benefit *886 Options, Inc. v. Med. Mut. of Ohio,* 174 Ohio App.3d 29, 880 N.E.2d 926, 934 (2007). Regardless of whether Ohio law or Wisconsin

18

law applies, (Treviso is a resident of Wisconsin), they both involve similar analysis. Under Wisconsin law in order to establish a breach of contract a plaintiff must show: "(1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." *Brew City Redevelopment Grp., LLC v. The Ferchill Grp.,* 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 807, 714 N.W.2d 582, 588. Under both Ohio and Wisconsin law a plaintiff must show damages to establish a breach of contract. Yet, given the potential national scope of the class there is no reliable formula to establish class wide damages given the widely varying expenses putative class members may have incurred.

The Court finds the damages question, along with the presence of a majority of class members signing releases, ultimately defeats class certification. There are simply too many individualized questions to determine damages that cannot be extrapolated to apply uniformly to the class. The Hall of Fame Game opens the NFL preseason each year and the Defendant advertises ticket sales for the game across the country. (Brook Richards depo pgs. 24-28). The game attracts fans from across the country who attend the game. (*Id* at 28-29). Plaintiff's expert Hastings opines that damages to the class may be aggregated and that a reasonable aggregate damages figure for the class may be determined based on ticket prices, travel expenses and lodging. Hastings opines that her methodology for determining an aggregate class damage for tickets sold to the 2016 HOF game involves using primary and secondary ticket sales sources to formulate an estimate of the list price for tickets sold and resold. She then opines that damages may be determined by adding all ticket prices from primary and secondary sources to arrive at an aggregate ticket cost and then subtracting the

damages for class members who accepted the Defendant's reimbursement package.

Second, for transportation damages, Hastings opines that an appropriate methodology to determine damages would involve using the best data source to determine if someone drove or flew to the game for each zip code associated with a ticket purchase and then add the total costs using federal standard reimbursement rates for personal vehicle travel miles. Damages may be determined by calculating drive time and distance from each ticket purchaser's origin zip code using Google Maps or a similar application and air fare rates posted online for flights into Canton. She suggests using one of two methods to determine the probability that someone from a particular zip code drove or flew to the game. One method is to survey the people who took Defendant's reimbursement offer. The second method would be to use personal financial management advice calculators which suggest the method for travel to a vacation or entertainment location. Using the origin zip code for ticket purchases. Hastings asserts that a reasonable probability can be established for whether a purchaser from a particular zip code drove or flew to the game.

Third, the damages incurred from lodging expenses can be estimated by finding the listing prices for hotels in the Canton area at the time of the game and electronic records on completed reservations. Thus, by adding all prices for hotel stays including restrictions, aggregate lodging damages can be estimated.

Defendant contends these methodologies are irrelevant to the claims in the case because they do nothing more than offer simple addition and subtraction of data to arrive at a figure which a jury is more than capable of doing itself. Simple math is not outside the knowledge of the average juror and does not qualify as scientific, technical or specialized

knowledge. Rather than presenting complex economic theories and advanced calculations based on technical expertise, Hastings' methodologies involve nothing more than taking data from publicly available sources and applying basic math to arrive at an aggregate damages figure.

Defendant further contends Hastings' Report is unreliable because it relies on a string of assumptions that include the prices paid for tickets on the primary and secondary markets, the identity of secondary market ticket sellers, the modes of transportation to the HOF game, lodging choices and prices. All these assumptions undermine the reliability of her opinions.

Defendant offers its own rebuttal expert, Dr. John Burke, an economist, who opines that Hastings' Reports offers an estimate of damages based on a series of assumptions that cannot determine the amounts of damages for the class. For example, Hastings' analysis of ticket expenses is based on estimations of the secondary market sales prices, or an approximation using a sample of secondary tickets sold for the 2017 HOF game. This improperly assumes similar sales between 2016 and 2017. Burke also points out that Hastings further relies on potential sources for tickets on the secondary market. Hastings' methodology further assumes all tickets to the 2016 game were the same price when some were considerably more expensive. Burke finds similar problems with Hastings' methodology for travel and lodging expenses. Hastings only considered flight or driving expenses and claims an estimate may be made based on a ticket purchaser's zip code such that a Court could make a determination on the likelihood a ticket purchaser drove or flew to the game based on this probability. This method does not take into account that regardless of distance from the game, people make travel choices based on economic circumstances.

Furthermore, it is based on the assumption that all who purchased airlines tickets purchased them at the same time so there is no difference in air fare and does not account for the differences in ticket prices between airlines.

As to lodging, Burke contends Hastings improperly assumes everyone stayed in a hotel and that prices do not vary from hotel to hotel or even room to room in a given hotel. She does not consider Air Bnb or other alternatives. In short, her aggregates are mere estimations with no account for the widely varying circumstances, prices and methods used by the putative class to purchase tickets, travel to the game and lodge. Burke says the class's damages are so individualized they cannot reasonably be estimated. Defendant adds that Hastings' aggregate methodology cannot be considered because it wholly fails to offer any method for aggregating the other damages Plaintiff alleges in its Complaint, such as loss of wages and expenses incurred for items purchased at the game.

The Court agrees with Defendant that under these circumstances it is impossible to reasonably estimate classwide damages as they will vary widely based on individual factors so numerous as to render any attempt to estimate unreliable. The game attracts fans from all over the country, presenting highly individualized inquiries into method of travel, time of travel and type of travel. The Court agrees with Defendant's expert, Dr. Burke, that the distance one lives from the game does not indicate the method used to travel to the game. One's own economic circumstances dictate to a large extent the method of travel. Plus, Dr. Hastings methodology does not account for the fact that many fans travel to games in buses. Lodging varies widely, depending how long someone stays in the area before and after a game; and that decision is highly individualized based on many factors, including one's

economic circumstances. Varying ticket prices based on location of seats, whether they were purchased on the primary of secondary market, or which type of ticket was purchased, all militates strongly against class certification. When also considering Plaintiff's other proposed damages of wage losses and products purchased at the game there is simply no way to reasonably estimate classwide damages, therefore militating strongly against Plaintiff meeting the Rule 23(b)(3) requirement that class issues predominate over individual issues.

In *Sims, et al., v. Jones, et al.* 296 F.R.D. 485 (S.D. Tex. 2013) under facts similar to those before the Court, the Texas district court denied class certification for a class of ticket purchasers for the 2011 Super Bowl. These ticket purchasers alleged breach of contract based on temporary seats being unavailable. In denying class certification, the court found that damages would be too individualized to adjudicate on a classwide basis. In *Sims*, the court held that should it certify the class, which consisted of approximately 40 members, "the trial on the merits would devolve into 40 mini-trials solely to determine damages. *Id.* at 500. The Court determined "it is therefore clear that individual issues predominate over the one remaining common legal issue." *Id.*

Here, the same concerns apply, but on a much larger scale as the putative class numbers approximately 3,000. Any attempt to determine damages would necessarily involve 3,000 mini-trials, defeating the purposes of a Rule 23 class action. Therefore, for the foregoing reasons, the Court finds individual questions of damages predominate over common question of law or fact and Plaintiff has failed to meet its burden demonstrating that a class action is the superior method for resolving the breach of contract claims. Thus, the Court denies Plaintiff's Motion for Class Certification.

The Fifth Circuit in *Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016), upheld the denial of certification in *Sims*. There, the Fifth Circuit acknowledged that "individualized damages calculations will not preclude a finding of predominance." *Id* at 529. However, it recognized that "class treatment may not be suitable where calculation of damages is not susceptible to a mathematical or formulaic calculation." *Id.* Ultimately, the Fifth Circuit affirmed denial of certification because "plaintiffs' damage claims focus almost entirely on facts and issues specific to individuals rather than the class as a whole." *Id.*

In analyzing the above factors, the Court holds that class certification is not the superior method for addressing the breach of contract claims because the class representative's claims are not typical of the class. The class definition includes those who have already settled with Defendant and released their claims and furthermore, the highly individualized nature of the damages sought by Plaintiff demonstrates that class issues do not predominate over individualized issues. Therefore, the Court denies Plaintiff's Motion for Certification.

However, Plaintiff has asked in the alternative that the Court certify a liability only class. Rule 23(c)(4) allows for certification of a class "with respect to particular issues." However, this issue was only discussed briefly in the alternative and the Court has insufficient briefing on the issue to decide. Furthermore, the Court acknowledges that the class definition could be redrafted to exclude from the class those members who have already signed releases. Therefore, the Court will entertain a renewed motion for class certification on a liability only class with a different class definition. The motion shall also discuss whether subclasses are necessary based on the differing terms and conditions presented by the different tickets. The

Motion should also discuss how the Court should consider the damages portion of the case should it certify a liability only class.

Therefore, for the foregoing reasons, the Court denies Plaintiff's Motion for Class Certification. Plaintiff may file a Renewed Motion for Class Certification no later than October 15, 2018. Also, having considered Dr. Hastings' expert report, the Court denies Defendant's Motions to Strike. (ECF #'s 105 & 112).

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated: September 25, 2018