IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CARMELO TREVISO, Individually and On Behalf of All Other Similarly Situated**, <br><br> Plaintiffs, <br><br> vs. <br><br> **NATIONAL FOOTBALL LEAGUE, et al.**, <br><br> Defendants. | CASE NO. 5:17-CV-00472 <br><br> JUDGE CHRISTOPHER A. BOYKO |

**DEFENDANT, NATIONAL FOOTBALL MUSEUM, INC., dba PRO FOOTBALL HALL OF FAME'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL *INSTANTER***

Respectfully submitted,

*/s/ Scott M. Zurakowski*
Scott M. Zurakowski (0069040),
Aletha M. Carver (0059157),
Joseph J. Pasquarella (0087709),
James M. Williams (0087806), and
Amanda M. Connelly (0096835), of
KRUGLIAK, WILKINS, GRIFFITHS
 & DOUGHERTY CO., L.P.A.
4775 Munson Street, N.W./P.O. Box 36963
Canton, Ohio  44735-6963
Phone:  (330) 497-0700/Fax:  (330) 497-4020
szurakowski@kwgd.com; acarver@kwgd.com;
jpasquarella@kwgd.com; jwilliams@kwgd.com;
aconnelly@kwgd.com
ATTORNEYS FOR DEFENDANT NATIONAL
FOOTBALL MUSEUM, INC., dba PRO
FOOTBALL HALL OF FAME

02278821-1 / 00263.19-0001

**SUPPLEMENTAL MEMORANDUM IN OPPOSITION**

I.   **INTRODUCTION**

In the past few weeks, new and pertinent evidence regarding Treviso's proposed class counsel's finances and alleged criminal activity came to light, which directly impact counsel's ability to adequately serve as class counsel. After learning of this new evidence, the HOF determined it was relevant to Treviso's pending motion for appointment of class counsel. Therefore, the HOF supplements its Memorandum in Opposition to Plaintiff's Renewed Motion for Class Certification and Appointment of Class Counsel. [Doc. ID # 132]

For the reasons stated in detail below, Michael Avenatti's and Eagan Avenatti, LLP's ("EA") inadequacy will negatively affect the putative class members' and the HOF's interests. Because Treviso and his proposed class counsel fail to meet the adequacy prerequisite, his renewed motion for class certification must be denied in its entirety.

II.   **PROCEDURAL AND FACTUAL BACKGROUND**

*Procedural Background:*

On September 25, 2018, this Court issued its Opinion and Order, which denied Treviso's original Motion for Class Certification and Appointment of Class Counsel, but permitted Treviso to brief the issue of a liability only class and whether subclasses are appropriate. [Doc ID # 126, Page ID # 2517-2518]

On November 5, 2018, Treviso filed a Renewed Motion for Class Certification and Appointment of Class Counsel. [Doc ID # 129] The HOF filed a Memorandum in Opposition to Plaintiff's Renewed Motion for Class Certification and Appointment of Class Counsel on December 10, 2018. [Doc ID # 132] Plaintiff filed his Reply in Support of his

renewed motion on December 17, 2018. [Doc ID # 133] To date, the Court has not issued an opinion on the renewed briefing.

*Declarations in Support of Treviso's Motion for Class Certification:*

By way of reminder, proposed class counsel previously filed a declaration in support of the motion for class certification and appointment of class counsel. [Doc ID # 102-2] It is clear from the declaration signed by Mr. Avenatti that the firm of EA is the proposed class counsel for Treviso. [*Id.*, ¶ 13 ("The **firm**, therefore, can fairly and adequately represent the interests of Plaintiffs and the classes." (Emphasis added.)] The declaration further states, if the class is certified, "[p]ursuant to written agreements with the named plaintiff, [EA] is advancing the costs to prosecute this action." [*Id.*, ¶ 11] Although the Becker Law Firm has entered an appearance on behalf of Treviso, it has not been present at any proceedings, including telephone status conferences, oral argument, and depositions (despite the fact the depositions were held at the Becker Law Firm's offices).

Following the HOF's renewed briefing on Mr. Avenatti's and EA's inadequacies (Doc ID # 132, Page ID # 2568-2570), attorney Romney Cullers from the Becker Law Firm and Mr. Avenatti filed additional declarations. [Doc ID # 133-1 and # 133-2] Mr. Avenatti stated EA's "ability to commit all resources necessary to do so has not in any way been hindered since class certification was first sought in January 2018." [Doc ID # 133-2, ¶ 4] Mr. Avenatti's declaration further confirms that it is EA performing the work, not the Becker Law Firm. [*Id.*, ¶ 3 (stating EA prepared the appeal to the Sixth Circuit Court of Appeals, and EA prepared the Renewed Motion for Class Certification)]

In recent weeks, Treviso's proposed lead counsel and proposed class counsel, Mr. Avenatti and EA, have had various allegations raised and judgments granted against them. Due

to these events, the HOF offers this Supplemental Brief to further illustrate Mr. Avenatti's and EA's inadequacies to represent the proposed class.

III. **SUMMARY OF ARGUMENT**

This Supplemental Brief further exemplifies the inability of Mr. Avenatti and EA to fairly and adequately represent the proposed class. Over the past ten (10) months, the following events have occurred:

1. On May 22, 2018, a creditor of EA obtained a $10,000,000 judgment, plus interest, against the firm.

2. On November 16, 2018, EA was evicted from its offices in Newport Beach, California for failure to pay rent.

3. On November 20, 2018, a creditor of the proposed lead counsel, Michael Avenatti, obtained judgment in an amount exceeding $5,000,000, plus interest, against Mr. Avenatti.

4. On February 13, 2019, EA consented to the appointment of a receiver to take control of EA.

5. On March 7, 2019, EA voluntarily filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Central District of California, which was then dismissed by the bankruptcy court because Mr. Avenatti lacks control over his firm due to the receivership.

6. On March 22, 2019, a criminal complaint was issued against Mr. Avenatti in the United States District Court for the Central District of California, alleging that Mr. Avenatti embezzled a client's settlement funds and alleging Mr. Avenatti engaged in various forms of tax fraud.

7. On March 24, 2019, a criminal complaint was issued against Mr. Avenatti in the United States District Court for the Southern District of New York, alleging extortion after Mr. Avenatti allegedly sought payment from Nike for an internal audit to avoid Mr. Avenatti holding a press conference regarding Nike's business dealings.

8. On April 1, 2019, Mr. Avenatti filed a declaration in support of a motion to appoint interim class counsel, and remove Mr. Avenatti, in a class action pending before the United States District Court for the Central District of California. [*See Bahamas Surgery Center, LLC v. Kimberly-Clark Corporation, et al.*, Case No. 2:14-cv-08390-DMG-PLA]

The above judgments and allegations are in addition to the various inadequacies raised in the HOF's original Memorandum in Opposition, including Mr. Avenatti's arguably improper solicitation via Twitter of Treviso to be the class representative after Greg Herrick backed out. [Doc. ID # 113, PageID # 2277-2279] For the reasons contained herein, the proposed class counsel cannot adequately represent the proposed class.

IV. **LAW AND ARGUMENT**

    A. <u>TREVISO'S PROPOSED CLASS COUNSEL WHOLLY FAILS TO SATISFY THE ADEQUACY REQUIREMENTS UNDER FED.R.CIV.P. RULE 23(a)(4) AND RULE 23(g), AND THIS ALONE IS SUFFICIENT TO DENY CLASS CERTIFICATION.</u>

As the Court is well aware, a <u>rigorous</u> analysis of Fed.R.Civ.P. 23(a) must be conducted before a class may be certified. (Emphasis added.) *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). "The inadequacy of class counsel can alone be grounds to deny certification of a class." *Niemeyer v. Williams*, 910 F.Supp.2d 1116, 1132 (C.D.Ill.2012). Rule 23(a)(4) requires the representative parties, i.e., the class counsel, "will fairly and adequately protect the interests of the class." The Sixth Circuit looks at the adequacy prerequisite in two parts: (1) if the representatives have common interests with the unnamed members of the class, and (2) if the representatives will vigorously prosecute the interests of the class through qualified counsel. *Pund v. City of Bedford, Ohio*, N.D.Ohio No. 1:16CV1076, 2017 WL 3219710, *5 (July 28, 2017).

This second inquiry under Rule 23(a)(4) determines the competence of class counsel. *Id*. "In assessing the vigor of representation, the Court may consider the resources of the representative and [his] counsel and their ability to investigate claims and to contact other class members." *Kutschbach v. Davies*, 885 F.Supp. 1079, 1085 (S.D.Ohio 1995), citing *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 66 (S.D.Ohio 1991).

Fed.R.Civ.P. 23(a)(4) requires that the representative parties (i.e., the class representative and the proposed class counsel) will fairly and adequately protect the class's interests. Fed.R.Civ.P. 23(g) contemplates the adequacy of the proposed class counsel before its appointment. Fed.R.Civ.P. 23(g)(1) ("[A] court that certifies a class must appoint class counsel."). Rule 23(g)(1)(A) requires the Court to look at four factors before appointing class counsel. Thus, if the Court were to certify a class in this matter, the following factors must be considered prior to appointing EA and Avenatti:

> "(i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class."

Fed.R.Civ.P. 23(g)(1)(A)(i)—(iv).

Fed.R.Civ.P. 23(g)(1(B) allows the Court to consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

While not all courts within the Sixth Circuit look to Rule 23(g) prior to class certification, it is important to acknowledge that Rule 23(g)(1)(A)(iv) requires the Court to inquire into the resources of the proposed class counsel before appointment. Further, Treviso, at the time he moved for class certification, also moved for the appointment of his proposed class counsel. [*See* Doc ID # 129; Doc ID # 102-1] Under both Rule 23(a)(4) and Rule 23(g)(1)(A)(iv), neither EA nor Avenatti can be appointed as class counsel because they lack the necessary resources and common interests.

After filing the renewed briefing on class certification, the following events transpired involving EA and Mr. Avenatti:

1. **On February 13, 2019, EA consented to a receiver being appointed to take control of the firm.**

After obtaining a $10,000,000 judgment against EA, creditor, Jason Frank, and EA entered into a *Joint Stipulation Re Appointment of Receiver and Restraining Order*. [*See* Joint Stipulation and signed Order approving the stipulation, collectively attached hereto and incorporated herein as Exhibit "A."] The Joint Stipulation and Order states, in relevant part, the following:

- "9. After qualifying, the Receiver shall have the power to take possession of and manage the business of EA and its tangible and intangible property * * * except that the Receiver will not be authorized to provide legal services on behalf of EA's client." [p. 5]

- 12.a. "The Receiver shall operate EA and take possession of all accounts relating to EA and its property." [p. 6]

- 13.b. "The Receiver shall have control of, and be the sole authorized signatory for all accounts of EA and client trust accounts or IOLTA accounts * * *" [p. 7]

- 14.a. "Take possession of all past and current client engagement contracts, case files, books and records, electronic files, and other documents necessary to manage the Receivership Assets without limitation;" [*Id.*]

Based on the Joint Stipulation and Order, it is clear Mr. Avenatti no longer has control over EA. This lack of control will have a negative effect on the interests of the proposed class members because there is now an uninterested, outside third-party controlling the operation and finances of EA. Although the receiver is not providing legal services, the receiver controls the finances and will have an impact on all financial aspects of this case.

2. **On March 7, 2019, Mr. Avenatti attempted to put his firm, EA, in Chapter 11 bankruptcy.**

Mr. Avenatti implies the recent judgments have not affected EA's ability to commit resources to the proposed class. [Avenatti Decl., Doc ID # 133-2, Page ID # 2619] However, despite his assertion, on March 7, 2019, Mr. Avenatti attempted to put EA into Chapter 11 bankruptcy in the United States Bankruptcy Court for the Central District of California. [*See* EA Bankruptcy Petition, attached hereto and incorporated herein as Exhibit "B."] EA's bankruptcy petition states it has 1-49 creditors with equal amounts of estimated assets and liabilities. [*Id*., pp. 3-4] Mr. Avenatti's filing of the petition clearly shows he believes the firm lacks the necessary resources, which would be a heavier financial burden in the context of a class action.

3. **On March 22, 2019, a criminal complaint was filed against Mr. Avenatti in the United States District Court for the Central District of California.**

Remoun Karlous, a special agent for the Internal Revenue Service (IRS), filed a criminal complaint in the United States District Court for the Central District of California against Mr. Avenatti personally. The complaint alleges one count of bank fraud, under 18 U.S.C. 1344(1), and one count of wire fraud, under 18 U.S.C. 1343. [*See* California Criminal Complaint, attached hereto and incorporated herein as Exhibit "C."] The complaint extensively details allegations of tax evasion by Mr. Avenatti through his various companies, including EA, beginning in January 2014. [*Id*.]

Of particular relevance to this case, the California Criminal Complaint alleges between January 2018 and November 2018 Mr. Avenatti defrauded one of EA's clients identified in the complaint as "G.B." [*Id*., Exh. 1, p. 11] After obtaining a settlement for G.B., Mr. Avenatti is accused of defrauding G.B. out of approximately $1,600,000 by telling the client

the settlement payment was to be expected in March, when the payment was actually paid in January. [*Id.*] The complaint alleges Mr. Avenatti had the $1,600,000 settlement payment transferred to one of his attorney trust accounts but used the entire portion for personal purposes. [*Id.*] The complaint further alleges the $1,600,000 in settlement funds were never paid to the client. [*Id.*, p. 137] Further still, the complaint alleges Mr. Avenatti, after receiving the settlement proceeds, offered to "advance" funds to G.B., even though the funds were legally the property of G.B. [*Id.*, p. 140]

The allegations contained in the California Criminal Complaint are very concerning and, if true, undoubtedly impact the interests of the proposed class and the HOF. *See Walter v. Palisades Collection, LLC*, E.D.Pa. No. 06-378, 2010 WL 308978, *10 (Jan. 26, 2010) (prior unethical conduct is a relevant consideration in determining the adequacy of proposed class counsel). For argument sake, if the current case was to settle, and the HOF was required to pay the proposed class a sum of money, the HOF cannot trust the proposed class counsel to properly handle any settlement funds.

> 4. **On March 24, 2019, a criminal complaint was filed against Mr. Avenatti in the United States District Court for the Southern District of New York.**

A warrant for Mr. Avenatti's arrest was recently issued in the state of New York after a criminal complaint was filed against him in the United States District Court for the Southern District of New York. [*See* New York Criminal Complaint, attached hereto and incorporated herein as Exhibit "D."] In the complaint, Mr. Avenatti is charged with two counts of conspiracy to transmit interstate communications with intent to extort, one count of conspiracy to commit extortion, and one count of extortion. [*Id.*, pp.1-3] Mr. Avenatti is accused of attempting to blackmail Nike into paying Mr. Avenatti's unnamed client $1,500,000, and an

additional payment to Mr. Avenatti (and his unnamed co-attorney) in an amount ranging from $15,000,000 to $25,000,000 for an internal audit of Nike. [*Id*., p. 4] The complaint details Mr. Avenatti's alleged conversation with Nike attorneys after the Nike attorneys contacted representatives of the United States Attorney's office regarding the threats and demands, which led to the subsequent audio recordings. [*Id*., p. 7]

Again, these allegations are of particular concern to the HOF, and presumably to the putative class members. The allegations question the ability of class counsel to fairly and adequately represent the class due to the severity of the crimes Mr. Avenatti is accused.

> 5. **On April 1, 2019, Mr. Avenatti filed a declaration in support of a motion to relinquish himself of his role as lead class counsel in a California-based class action.**

According to a declaration filed by Mr. Avenatti in *Bahamas Surgery Center, LLC v. Kimberly-Clark Corporation, et al.*, Case. No. 2:14-cv-08390-DMG-PLA ("Bahamas Surgery"), Mr. Avenatti, individually, was appointed as lead class counsel for the plaintiff on November 14, 2016. [*See* Avenatti Decl., attached hereto and incorporated herein as Exhibit "E," ¶ 1.] Recently, a motion was filed by EA's former associate, Ahmed Ibrahim, and another attorney to substitute themselves as lead class counsel. Paragraph 2 of Mr. Avenatti's declaration in support of the motion reads, in relevant part, as follows:

> 2. Out of an abundance of caution and to ensure that my fiduciary duties are met, I believe it is in the best interests of the class to relinquish my role as lead class counsel at this time. * * *" [*Id*., ¶ 2]

Mr. Avenatti's recent declaration requesting to be removed as class counsel shows he believes he is unable to fairly and adequately represent that class. Mr. Avenatti was appointed as class counsel in Bahamas Surgery. Here, additional briefing is still pending before this Court regarding Mr. Avenatti's and EA's adequacy and appointment of class counsel. However, if Mr.

Avenatti believes he is unable to continue as lead counsel for a case located in California, it should be presumed he is unable to be appointed as class counsel in this case.

V.    **CONCLUSION**

The Court should deny Treviso's Renewed Motion for Class Certification and Appointment of Class Counsel. As stated above, Treviso's proposed class counsel is unable to satisfy the adequacy prong of Rule 23(a)(4) and the requirements under Rule 23(g). For all of these reasons, the motion for class certification and appointment of class counsel must be denied.

*/s/ Scott M. Zurakowski*
Scott M. Zurakowski (0069040),
Aletha M. Carver (0059157),
Joseph J. Pasquarella (0087709),
James M. Williams (0087806),
Amanda M. Connelly (0096835), of
KRUGLIAK, WILKINS, GRIFFITHS
 & DOUGHERTY CO., L.P.A.
4775 Munson Street, N.W./P.O. Box 36963
Canton, Ohio  44735-6963
Phone:  (330) 497-0700/Fax:  (330) 497-4020
szurakowski@kwgd.com; acarver@kwgd.com;
jpasquarella@kwgd.com; jwilliams@kwgd.com;
aconnelly@kwgd.com
ATTORNEYS FOR DEFENDANT NATIONAL FOOTBALL MUSEUM, INC., dba PRO FOOTBALL HALL OF FAME

## **PROOF OF SERVICE**

I hereby certify that on the 3rd day of April 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                               */s/ Scott M. Zurakowski*
Scott M. Zurakowski, (0069040), of
KRUGLIAK, WILKINS, GRIFFITHS
 & DOUGHERTY CO., L.P.A.
ATTORNEYS FOR DEFENDANT NATIONAL
FOOTBALL MUSEUM, INC., DBA PRO
FOOTBALL HALL OF FAME