## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **CARMELO TREVISO, Individually and on behalf of all others similarly situated** | ) ) ) | **CASE NO. 5:17CV00472** |
| **Plaintiff,** | ) ) | **JUDGE CHRISTOPHER A. BOYKO** |
| **vs.** | ) ) | |
| **NATIONAL FOOTBALL LEAGUE, DBA PRO FOOTBALL HALL OF FAME,** | ) ) ) ) ) | **OPINION AND ORDER** |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Carmelo Treviso's Renewed Motion for Class Certification and Appointment of Class Counsel.  (ECF # 142).  For the following reasons, the Court grants Plaintiff's Motion.

Plaintiff brings a single claim for Breach of Contract on behalf of himself and a putative class of ticket holders who were denied the chance to watch the Hall of Fame Game when Defendant abruptly and without advance notice, cancelled the game due to dangerous field conditions.  The Court denied Plaintiff's original Motion for Class Certification, holding that "class certification is not the superior method for addressing the breach of contract claims

because the class representative's claims are not typical of the class as the class definition includes those who have already settled with Defendant and released their claims and the highly individualized nature of the damages sought by Plaintiff demonstrates that class issues do not predominate over individualized issues."  However, the Court allowed Plaintiff the opportunity to file a renewed motion that revised the class definition to exclude those ticket holders who had settled with Defendant and to allow the Court to consider certifying a liability-only class under Fed. R Civ. P. 23(c)(4).   Plaintiff has submitted the refiled Motion which Defendant opposes.  The matter is fully briefed and is ripe for ruling.

**Factual Background**

As recounted previously in the Court's Opinion and Order denying Plaintiff's Motion for Class Certification, on August 23, 2016, former named Plaintiff Greg Herrick, on behalf of himself and a putative class, filed this action with the United States District Court for the Central District of California against the National Football League ("NFL") and the National Football Museum, Inc. d/b/a the Pro Football Hall of Fame.  Plaintiff purchased a ticket to attend the Hall of Fame Game set for August 7, 2016, in Canton, Ohio, between the Green Bay Packers and the Indianapolis Colts.  Due to the alleged mismanagement of Defendants, the game was cancelled on the very day the game was set to be played, allegedly causing injury to Plaintiff and the putative class.  Class discovery is complete and Plaintiff has dismissed his claims against the NFL.  On March 16, 2018, Plaintiff filed a First Amended Complaint substituting a new class representative, Carmelo Treviso.

In his First Amended Complaint for Breach of Contract, Treviso, a resident of Wisconsin, alleges he purchased a ticket to the 2016 Hall of Fame Game.   Plaintiff alleges

2

the Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, ("CAFA") 28 U.S.C. § 1332(d), as the purported class exceeds 100 members and their damages, in aggregate, exceed $5,000,000.  Venue is proper as Defendant resides in the Court's judicial district and the events giving rise to the claims occurred therein.

The Pro Football Hall of Fame Game is an annual exhibition game held in Canton, Ohio on the weekend of the Pro Football Hall of Fame's induction ceremonies.  It is played in the Tom Benson Hall of Fame Stadium, located adjacent to the Canton Pro Football Hall of Fame Museum.   The turf at Benson Stadium had caused injuries to players, resulting in reconstruction of the stadium and its field.  However, reconstruction was not completed in time for the 2016 Hall of Fame game.  A used field was imported from the Superdome in New Orleans to be used for the game.  Decking was constructed on the field for a concert to be held two days prior to the game.  Defendant failed to inform fans that the field construction was incomplete at game time with whole sections of seating left uninstalled.  There was not enough seating to accommodate the number of tickets purchased.  Nor was the decking removed from the field until 2:45 p.m.  The ground crew was left with little time to prepare the field as a result.  They painted the midfield logo and endzone lettering but left insufficient time for it to dry before the game began.  To speed the drying process, the ground crew heated the field, resulting in melting the rubber pellets comprising the turf, creating a slick, sticky, congealed mess.

With two and a half hours to go before the start of the game the crew applied a substance to remedy the problems with the field, however, a Green Bay Packer employee noticed that the substance contained a warning that contact with skin would result in burns.  It

was then that the players were ordered off the field.   The team doctors and NFL Players
Association representative all advised against playing on the field.  No one informed the
ticket purchasing public that the game would be cancelled until fans were inside the stadium.
Defendant failed to report the cancellation for one to two hours after they knew it was to be
cancelled.  This was by design, according to Plaintiff, so fans would purchase food, drink and
souvenirs at the stadium as they waited for the game.  Finally, at 8:00 p.m., fans were told the
game was cancelled.

Plaintiff's First Amended Complaint alleges fans suffered damages including: out of
pocket ticket costs, lodging and travel expenses, food and souvenir purchases and missed
employment time.

**Plaintiff's Amended Renewed Motion for Class Certification**

According to Plaintiff, based on the Court's prior ruling the only issues to be decided
are whether Plaintiff can satisfy the typicality requirement of Rule 23 and whether subclasses
are needed.   The Court's prior ruling raised concerns that, due to the number of different
tickets and ticket outlets from which putative class members purchased tickets to the game,
differing disclaimer language might subject Treviso to defenses different from those of the
putative class.  According to Plaintiff, this is not the case and subclasses are not needed
because, regardless of from whom a putative class member bought a ticket or the type of
ticket purchased, there are no material differences that would subject different class members
to different defenses.  Plaintiff contends the different tickets exhibit the following similarities:
1) no ticket absolves Defendant of liability or its obligation to pay legal damages if the game
is cancelled; 2) no ticket limits the types of contractual damages to be recovered if a breach

4

occurs; 3) all tickets confer on purchaser the right to a seat to attend and view the game; 4) all tickets are contracts where fans paid money in exchange for the right to view the game; and 5) all tickets specified the game and a given seat.

Because contract interpretation presents questions of law and not of fact, Plaintiff argues the Court can make a determination on whether there is exculpatory language in the tickets without creating subclasses.

Plaintiff further contends the Court may certify a liability class under Fed. R. Civ. P. 23(c)(4) and resolve damages through the appointment of a special master.

Plaintiff contends the class definition meets all the Rule 23 elements.  In response to Defendant, Plaintiff contends the evidence presented demonstrates that there are no material differences in the tickets purchased by the class, therefore, no subclasses are needed. According to Plaintiff, Defendant's Rule 30(b) corporate representative testified on deposition that there were no material differences in the language of the tickets that would subject some ticket holders to defenses unavailable to the class as a whole.

Plaintiff disputes that the proposed class definition must be redrafted to exclude ticket holders who failed to attend the game because there is no evidence anyone failed to attend who held a ticket and, even if they did not attend, they still were entitled to damages as the refund of the price of the ticket would not fully compensate them for the additional charges added by the ticket outlets.

According to Plaintiff, all the various tickets are contracts that grant the purchaser or holder the right to see the 2016 Hall of fame Game.   None of the different tickets purchased for the 2016 Hall of Fame Game: absolved Defendant of liability or its obligation to pay legal

damages if the game was not played and do not contain exclusionary language relieving Defendant from paying damages for cancelling the Game due to field preparation.  Nor do any of the tickets limit the type of damages the holder could receive for breach.

As a result of the above, no putative class member would be subject to disparate defenses as a result of the particular ticket they purchased.  Consequently, Plaintiff asserts the Court does not need to create subclasses based on the type of ticket purchased.

Plaintiff also argues that certain tickets only limit the purchaser's ability to obtain a refund or an exchange pre-game and this limitation does not bear on the holder's ability to obtain contract damages for cancellation.  Also, any ambiguity would be construed against the drafter and any interpretation that would allow Defendant to sell tickets with the unabridged right to cancel at any time would render the contract illusory and/or unconscionable.

Plaintiff asks the Court to certify a liablity-only class and asks the Court find the Becker law firm and AI Law be appointed as class counsel as both are experienced class litigators with substantial resources to prosecute fully the action.

**<u>Defendant's Opposition</u>**

Defendant opposes the Amended Renewed Motion for Class Certification because Plaintiff's proposed class definition includes anyone who purchased and otherwise obtained a ticket but does not exclude those who did not attend the game.  Those putative class members would be fully compensated by the Defendant's reimbursement offer which includes full reimbursement of the ticket price.

Furthermore, the Plaintiff's class definition also includes those who acquired the ticket but did not purchase a ticket.  Such putative class members would not have suffered

economic harm in the loss of the cost of the ticket and should not be included in the class definition.

Defendant further contends that Plaintiff's request that the Court interpret the ticket languages at issue to determine if they contain the same limitation language is inappropriate at the certification stage of proceedings as it goes to the merits of the breach of contract claim. Moreover, even if the Court should consider a liability only class under Fed R. Civ. P. 23(c)(4) this determination does not abrogate Plaintiff's duty to satisfy the requirements of Fed. R. Civ. P. 23(a) & (b) which he cannot.

Also, Defendant asserts that Plaintiff's damages proposal militates against predominance because it will still require thousands of mini-trials to determine each class member's highly individualized damages.  Moreover, Plaintiff never addressed whether subclasses should be created as ordered by the Court in its prior order.

Finally, Defendant argues Plaintiff's class counsel is inadequate to represent the class as they lack class action experience, have not been present in the case from the beginning and have failed to sufficiently explain how they will protect the class's interests.

## LAW AND ANALYSIS

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (citation and internal quotation marks omitted).   "To be certified, a class must satisfy all four

of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate

representation—and fall within one of the three types of class actions listed in Rule 23(b)."

*Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537 (6th Cir. 2012) citing *Sprague v. Gen.*

*Motors Corp.,* 133 F.3d 388, 397 (6th Cir.1998) (en banc).  "The party seeking class

certification has the burden to prove the Rule 23 certification requirements." *Young,* 693 F.3d

at 537.  "In order to certify a class, the Court must consider the factors of Fed. R. Civ. P.

23(a) and at least one of the factors of Fed. R. Civ. P. 23(b)." *Id.*

     "Rule 23 does not set forth a mere pleading standard.  A party seeking class

certification must affirmatively demonstrate his compliance with the Rule." *Dukes,* 131 S.Ct.

at 2551.  "Such compliance must be checked through a 'rigorous analysis.'" *Id.* (quoting *Gen.*

*Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

     Fed R. Civ. P. 23(a) reads:

(a) Prerequisites. One or more members of a class may sue or be sued as
representative parties on behalf of all members only if:

**(1)** the class is so numerous that joinder of all members is impracticable;

**(2)** there are questions of law or fact common to the class;

**(3)** the claims or defenses of the representative parties are typical of the claims
or defenses of the class; and

**(4)** the representative parties will fairly and adequately protect the interests of
the class.

     A prerequisite to the Rule 23(a) is a finding by the Court that the putative class is

sufficiently defined.  In *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537-38 (6th Cir.

2012) the Sixth Circuit held,  "For a class to be sufficiently defined, the court must be able to

resolve the question of whether class members are included or excluded from the class by

reference to objective criteria.  Here, Plaintiff seeks to certify the following class:

> "The Nationwide Liability Class": All persons who paid for and/or acquired tickets to the 2016 NFL Hall of Fame Game for the resolution of the specific issue of whether Defendant breached its contracts with ticketholders when it cancelled the 2016 Hall of Fame Game.  The class excludes all persons who have accepted reimbursement from Defendant by submitting completed copies of "The 2016 Pro Football Hall of Fame Game Reimbursement Election Form" to Defendant.

## Class Definition

In *Young*, the Sixth Circuit held, "[t]he class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class."  693 F.3d at 537-38.  "Ultimately, this Court's duty is to ensure the proper exercise of Rule 23.  That duty includes the obligation to create a new definition sua sponte if the parties' own proposals are not adequate or accurate." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 302 F.R.D. 448, 462–63 (N.D. Ohio 2014). See *Metropolitan Area Hous. Alliance v. U.S. Dep't of Hous. & Urban Dev.*, 69 F.R.D. 633, 637 (N.D.Ill.1976) (rejecting both parties' proposed class definitions and creating a new definition sua sponte, because "the definitions proposed by both parties are inadequate;" the court chose a definition "similar to the one originally proposed by the Plaintiffs and narrower than the second [one proposed by Plaintiffs]," and also "much broader than the one suggested by the defendants");  *Hagen v. City of Winnemucca,* 108 F.R.D. 61, 64 (D.Nev.1985) ("Many circuits have held that the court itself may construct a definition of the class.").  See also *Barney v. Holzer Clinic, Ltd., 110 F.3d 1207 (6th Cir.1997)* (affirming the district court, after it certified a class and then dismissed the class's claims, but modifying sua sponte the trial court's class definition); *Godec v. Bayer Corp.,* 2011 WL 5513202

9

(N.D.Ohio, Nov. 11, 2011) (granting a motion for class certification, but with a narrower class definition than requested).

Here, the class definition does include those who did not purchase tickets but third party beneficiaries may still assert a breach of contract claim. See *Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F. Supp. 2d 763, 770 (N.D. Ohio 2004)("an action for breach of contract can only be maintained by the parties to the contract or those deriving rights from the contracting parties, such as an intended third-party beneficiary.") citing *Grant Thornton v. Windsor House, Inc.,* 57 Ohio St.3d 158, 161, 566 N.E.2d 1220 (1991). Thus, the class may include those who acquired but did not purchase a ticket.

Defendant also contends the class definition includes those who purchased a ticket but did not attend the game. At this point in the litigation, a ticket purchaser who did not attend the game would most likely be unable to assert a breach of contract claim unless he or she was denied a refund after requesting one. However, because the Court may alter the class definition at any time, should discovery demonstrate that members of the putative class did not attend the game and suffered no injury, the Court may alter the class definition at a later time after fact discovery and motion practice on the merits. Thus, the Court adopts the Plaintiff's class definition.

**<u>Numerosity</u>**

There is no dispute the putative class satisfies the numerosity requirement as the class exceeds three thousand members. The Court considers class size, geographic distribution of members and the ability of class members to pursue individual litigation. *See Kreiger v. Gast, et al.*, 197 F.R.D. 310, 314 (W.D. Mich. 2000). Although the Court considers all these

factors, the Sixth Circuit has held that a class of forty or more members is sufficient to meet the numerosity requirement of 23(a).  *Id.*; *see also Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995).  Accordingly, "substantial numbers usually satisfy the numerosity requirement."  *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).

**<u>Commonality</u>**

In determining commonality, the Sixth Circuit looks for "a common issue the resolution of which will advance the litigation."  *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  This common issue or question "need only be one question common to the class."  *Id.*   Moreover, "[n]o matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action." *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988).  Here, commonality is also met as the class injuries derived from a common event, the late cancellation of the game, and a common question: was the cancellation of the game a breach of contract?    Resolution of these issues will determine the issue of liability class-wide.

**C. Typicality**

Under Sixth Circuit precedent, "a claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (internal citations omitted).  "[P]laintiffs must show that their injury arises from or is directly related to a wrong to the class, and that wrong includes the wrong to the plaintiff."  *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 572(6th Cir. 2004) (internal citations omitted).

11

Here, Treviso purchased a ticket to the game, attended the game and was denied a game due to the alleged misconduct of Defendant.  His claims are typical of the class as defined.

Defendant contends the differing tickets purchased for the game contain distinct exclusions which require separate inquiry and may subject class members to separate defenses militating against class certification.  Below are the relevant tickets and language:

| **TICKET TYPE** | **TICKET LANGUAGE** |
| --- | --- |
| 1. Commemorative Ticket | Front: "**NO EXCHANGE – NO READMITTANCE – NO REFUND**." FOR ANY REASON." |
| 2. Thermal Ticket | Holder of this ticket voluntary assumes all risks and danger incidental to the event for which this ticket is issued whether occurring prior to, during or after same and agrees that the organization, venue, presenter, agents, participants, staff or players are not responsible or liable for any injuries resulting from such causes. * * * **ABSOLUTELY NO REFUND OR EXCHANGES FOR ANY REASON.**" |
| 3. Etix Ticket | "This ticket is a revocable license and may be taken up and admission refused upon refunding the purchase price appearing hereon is grounds for seizure and cancellation without compensation. Holder of this ticket voluntarily assumes all risks and danger incidental to the game or event for which this ticket is issued whether occurring prior to, during, or after same and agrees that the organization, venue, presenter, agents, participants, players, or ETix are not responsible or liable for any injuries resulting from such causes." |
| 4. Etix Print-at-Home Ticket | "CANCELLED OR POSTPONED EVENTS: Etix will issue refunds ONLY if an event is canceled in its entirety. Refunds for rescheduled events will be provided only with the venue's or promoter's approval. If an event is canceled and not rescheduled, refunds will automatically be applied to the credit card used by the customer at the time of purchase." |

12

5. Etix Mobile Ticket                     "CANCELLED OR POSTPONED EVENTS: Etix will issue refunds ONLY if an event is canceled in its entirety. Refunds for rescheduled events will be provided only with the venue's or promoter's approval. If an event is canceled and not rescheduled, refunds will automatically be applied to the credit card used by the customer at the time of purchase."

The Court agrees with Plaintiff that the above ticket languages are not so dissimilar as to subject each class member to a separate inquiry on liability.  Rather, a breach of one would be a breach of all.  In addition, none contain any limiting language that precludes recovery of damages for breach, such as travel or lodging expenses.  While refunds of the ticket price may or may not have been given for some ticket purchases, the Court has already determined individual damages are not amenable to class certification in this case given the highly individualized nature.  So while some members may be entitled to a refund and some may not, this issue does not defeat certification where there is still the common question of whether the failure to hold the 2016 Hall of Fame Game was a breach of contract with a class of ticket holders.   In short, the above different tickets do not preclude certification of a liability class.

**Adequacy**

Under the adequacy requirement, the Court considers both the adequacy of the representative and the adequacy of counsel.  To certify a class, the Court must find the named class representatives adequate under Fed. R. Civ. P. 23(a)(4).  Further, the Court must also appoint class counsel and find them adequate under Fed. R. Civ. P. 23(g)(1).

**Adequacy of Representative**

"[A] class representative must be part of the class and possess the same interest and

13

suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). To do so, the class representative must have interests aligned with those of the other class members. Further, there must be no evidence of conflict of interest or collusion between the lead Plaintiff and the proposed class. In *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998), the Sixth Circuit, quoting the Supreme Court in *Amchem Products, Inc.*, 521 U.S. at 625, stated: "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." The Sixth Circuit continued, "[a]ccordingly, . . . there must be an absence of a conflict of interest, and the presence of common interests and injury." *Rutherford*, 137 F.3d at 909.

Here, the Court has already determined Treviso's claim is the same as the class. Furthermore, there is no evidence of collusion of conflict of interest between Treviso and his counsel, nor is there any apparent conflict with the class he seeks to represent. Thus, the Court finds Treviso will adequately represent the class.

### Adequacy of Counsel

Under Fed. R. Civ. P. 23(g)(1)(A), the Court must consider:

"**(I)** the work counsel has done in identifying or investigating potential claims in the action;
 **(ii)** counsel's experience in handling class actions . . . and the types of claims asserted in the action;
**(iii)** counsels' knowledge of the applicable law; and
**(iv)** the resources that counsel will commit to representing the class. . . "

Defendant argues that Plaintiff fails to address if proposed counsel will advance the costs of litigation, and does not identify which counsel will provide notice to the class, nor is there any representation how class counsel's fees will be paid. Finally, proposed class

14

counsel has little, if any, experience acting as lead counsel in a class action case.  For these reasons, Defendant disputes the adequacy of class counsel.

In response, Plaintiff's counsel represents the Becker law Firm has been representing Plaintiff since the beginning of the litigation.  Counsel Romney Cullers attests he has twenty-five years experience as a lawyer and is an experienced class action litigator and his firm has the financial resources to litigate this action on behalf of the class.  In addition, Counsel Ahmed Ibrahim has years of experience in complex litigation, including class actions, and has been on this case from the beginning and recently litigated a class action in California that is presently on appeal.

In short, based on the above representations the Court finds counsel has the resources and experience to adequately represent the interests of the class.

## **Predominate**

To certify a class Plaintiff must also satisfy one of the three Rule 23(b) requirements.  Plaintiff alleges a class certification is appropriate under Rule 23(b)(3) because  common questions "predominate over any questions affecting only individual members" and that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy."  *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 592–93, 117 S. Ct. 2231, 2235, 138 L. Ed. 2d 689 (1997).  While the Court previously determined that the highly individualized nature of damages precluded class certification,  a liability-only class issue concerning whether each class member suffered a breach of contract for which they are entitled to damages presents a common question that predominates over thousands of mini-trials on the identical question making this class amenable to class certification for resolution

15

of this particular issue.  Rule 23(c)(4) allows for certification of a class "with respect to particular issues."  The Court finds that the common question of whether Defendant breached each ticket holders' contract predominates over any individualized case as it will more efficiently determine the question on a classwide basis in a single action and conserves judicial resources.

Therefore, for the foregoing reasons, the Court certifies the class and approves Treviso as class representative and appoints proposed counsel as class counsel.  Plaintiff shall submit its proposed class notice for the Court's approval no later than December 14, 2020.

IT IS SO ORDERED.


Date: 11/30/2020                    /s/Christopher A. Boyko
                                    CHRISTOPHER A. BOYKO
                                    Senior United States District Judge

16