**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CARMELO TREVISO, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 5:17-cv-00472 |
| Plaintiffs, | Judge Christopher A. Boyko |
| vs. | |
| NATIONAL FOOTBALL MUSEUM, INC. dba PRO FOOTBALL HALL OF FAME, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

## I.     INTRODUCTION

Plaintiff and duly appointed class representative Carmelo Treviso, on behalf of himself and all others similarly situated ("Plaintiff" or "Mr. Treviso"), brought this action against Defendant National Football Museum, Inc. dba Pro Football Hall of Fame ("Defendant" or the "Hall of Fame") arising out of Defendant's cancellation of the 2016 NFL Hall of Fame Game in Canton, Ohio.  This action was filed on August 23, 2016.  Nearly seven years later, Plaintiff and Defendant (hereafter, the "Parties") presented the Court with a settlement and release to finally resolve this action on a class basis.  On July 6, 2023, the Court entered an order granting preliminary approval of the Class Action Settlement Agreement (ECF No. 181-1) (the "Settlement Agreement" or "Settlement') and the proposed attorneys' fees, costs, and service award contained therein.

Since the Court's order, the basis for approving the Class Action Settlement Agreement (the "Settlement") and proposed fees and costs has only grown stronger.  With 3,580 estimated class members, Plaintiff is pleased to report that 2,239 timely claims[1] have been made—an

---

[1] This does not represent the number of claims determined to be valid, as the claims administrator still needs to review and process each claim individually.  It nevertheless reflects that the notice

extraordinarily and extremely favorable response from the Class. That is in large part due to the generous terms negotiated for the Class. Specifically, the settlement gives those fans who did not settle with Defendant by accepting the voluntary reimbursement program introduced by Defendant in 2016 to either seek payment of their actual documented ticket costs and expenses to travel to the Game, or, if documentation is not available, to be reimbursed a fixed sum of $300 plus the face value of their tickets. This compensation far exceeds the amount available under Defendant's 2016 reimbursement program. Moreover, there were no opt-outs or objections, two other objective indicators that the Settlement was well-received.

As the Court is aware, the Parties negotiated the material terms of this Settlement at arms-length before the Court at the Settlement Conference on May 3, 2023. In addition, the settlement provides for a modest and reasonable attorney fee and cost request negotiated after the benefits to the class were negotiated. The fee request is 25 percent of the benefits available for the Class, which is well within the norm in the Sixth Circuit.

For these reasons and the reasons stated below, the settlement is fair, adequate, and reasonable, and should be granted final approval. In addition, Plaintiff requests that the proposed fees, costs, and service award for Mr. Treviso be approved. The Parties respectfully request that the Court enter the concurrently filed proposed final order and judgment.

## II.     STATEMENT OF FACTS

### A.     Procedural Background

The Pro Football Hall of Fame Game is an annual National Football League exhibition game held during the weekend of the Pro Football Hall of Fame's induction ceremonies in Canton, Ohio. The 2016 Hall of Fame Game was scheduled to take place on August 7, 2016 between the Green Bay Packers and Indianapolis Colts (the "Game"). (ECF 181-1 at 1.)[2] On the day of the

---

plan was successful and that the Class found the benefits available under the Settlement to be appealing, and it is anticipated that the final valid claims rate will be higher than typical claims rates seen in similar matter.

[2] "ECF" refers to the docket entry control number in this action. Page number cites refer to the pagination found in the blue PACER header at the top of each page.

Game after the scheduled start time, Defendant cancelled the Game due to field conditions.  (ECF 181-1 at 42.)

On August 18, 2016, the Hall of Fame extended a voluntary reimbursement package to fans.  (ECF No. 21-1, 21-2.)  More specifically, the Hall of Fame offered a refund of the face value of the Game ticket, plus processing and handling fees and shipping fees, a full refund of any pre-sale reservation fees paid to the Hall of Fame, a refund of any pre-paid parking fees, and a reimbursement of up to $289 for any one-night hotel stay associated with the Game.  (ECF No. 21-2 at 8.)  To be eligible for the reimbursement package, fans were required to substantiate their expenses with documentation.  (*Id.*)  The Hall of Fame also offered four free Pro Football Hall of Fame museum tickets (valid through the end of 2021), the right to purchase tickets to a future Hall of Fame Game or Enshrinement Ceremony before the general public, tickets to a future Hall of Fame Game or Enshrinement Ceremony between 2018 and 2021, a one-time 30% discount on Hall of Fame merchandise, a free commemorative photo of the 2016 Hall of Fame class, and a free 2016-2017 Hall of Fame yearbook.  (*Id.*)

On August 23, 2016, Greg Herrick initiated this class action in federal court in California on behalf of all persons who acquired tickets to attend the Game seeking monetary relief.  (ECF No. 1.)

On March 6, 2017, the district court in California transferred this action to this Court.  (ECF No. 41.)

On March 15, 2018, the Court granted the Parties' Joint Motion for Leave to File First Amended Complaint whereby Plaintiff Carmelo Treviso was substituted as the putative class representative to represent the class of persons who acquired tickets to the Game in place of Greg Herrick.  The First Amended Complaint was filed the next day.  (ECF No. 121.)

On January 15, 2018, Plaintiff a motion for class certification.  (ECF No. 102.)  On September 25, 2018, the Court denied the motion, but ruled that it would entertain a renewed motion for class certification on a liability only class with a different class definition.  (ECF No. 126 at 24-25.)

3

On November 5, 2018, Plaintiff filed a renewed motion for class certification seeking certification of a nationwide liability-only class.  (ECF No. 128.)

On April 23, 2019, prior counsel, Michael Avenatti, filed a declaration stepping down as co-counsel for the putative class.  (ECF No. 135-2.)  The same day, Mr. Ibrahim of AI Law, PLC, and Romney Cullers of the Becker Law Firm filed a motion to amend the renewed motion for class certification to formally replace Mr. Avenatti and his firm.  (ECF No. 135.)  They included a declaration from Plaintiff Treviso stating that as the putative class representative, he believed it was in the best interests of the class to appoint Mr. Ibrahim and his firm, and Mr. Cullers and his firm, as co-counsel for the class.  (ECF No. 135-3.)

Defendant opposed this motion.  (ECF No. 138.)  The Court, however, granted the motion, finding, among other things, that Plaintiff Treviso had the right to select counsel to litigate his claim.  (ECF No. 141 at 2.)  Because the pending renewed motion for class certification did not address Mr. Ibrahim's adequacy as counsel under Rule 23(a)(4) and Rule 23(g), the Court ordered that Plaintiff file an Amended Renewed Motion for Class Certification.  (ECF No. 141 at 2-3.)

On October 11, 2019, Plaintiff filed an Amended Renewed Motion for Class Certification. (ECF No. 142.)  This time, on November 30, 2020, the Court granted Plaintiff's motion.  (ECF No. 154.)  The Court certified a liability-only class on the question of whether Defendant was liable for the claims of the class for breach of contract.  (*Id.*)  In reaching its conclusion, the Court approved Mr. Treviso as the class representative, and appointed Mr. Ibrahim and his firm, and Mr. Cullers and his firm ("Class Counsel") as class counsel.  (ECF No. 154 at 13-16.)

On September 19, 2022, the Court set this case for the first phase of trial on liability for June 5, 2023.  (ECF Nos. 174-175.)

Earlier this year, Class Counsel worked with and paid for CPT Group, Inc. to disseminate notice to the Class of the Court's decision to grant class certification of a liability-only class and of the June 5, 2023 trial date.  (Ibrahim Decl., ¶ 17.)  In March and April 2023, notice was disseminated in accordance with the class notice plan approved by the Court.  (*Id.*)

**B.      The Class Representative**

Mr. Treviso purchased two tickets to the Game to attend the Game with his son and they were among the fans who arrived at the Game with their tickets who did not get to see the Game because it was cancelled.  (ECF 182-2 (Treviso Decl.) at ¶ 3.)  Mr. Treviso drove to the Game with his son from his home in Jackson, Wisconsin.  (*Id.*, ¶ 6.)  He paid $365.81 for a two-night hotel stay in Cleveland.  (*Id.*, ¶ 5.)  Mr. Treviso seeks to recover $1,078.63 for ticket costs, lodging, and transportation.  (*Id.*, ¶¶ 4-6.)

**C.      Discovery**

The Parties conducted substantial discovery in connection with this action.  With regards to written discovery, each side propounded interrogatories and requests for production of documents.  (Ibrahim Decl., ¶ 9.)  Each side responded to the interrogatories and document requests, and produced voluminous documents.  (*Id.*)  Plaintiff's counsel reviewed and organized the thousands of pages of documents produced by Defendant.  (*Id.*)

On December 13, 2017, Plaintiff's counsel took the deposition of then Hall of Fame President, David Baker.  (Ibrahim Decl., ¶ 10.)

On December 14, 2017, Plaintiff's counsel took the deposition of Defendant's Rule 30(b)(6) corporate representative witness, Brock Richards.  (Ibrahim Decl., ¶ 11.)

On February 2, 2018, Defendant's counsel took the deposition of Mr. Treviso.  (Ibrahim Decl., ¶ 12.)  The deposition was taken in Milwaukee, Wisconsin near Mr. Treviso's place of residence.  (*Id.*)  Attorney Ibrahim traveled from California to defend the deposition and assist Mr. Treviso in preparing for the deposition.  (*Id.*)

**D.      Settlement Negotiations**

In 2022, the Parties agreed to private mediation before the Honorable James J. McMonagle (Ret.) in an effort to try to settle the case.  (Ibrahim Decl., ¶ 18.)  The mediation took place on May 17, 2022 in Cleveland.  (*Id.*)  Attorney Ibrahim traveled from California for the mediation.  (*Id.*)  The Parties divided the costs evenly for the mediation.  (*Id.*)  The Parties were unable to resolve the case at that time.  (*Id.*)

On February 22, 2023, the Court ordered that with the trial date fast approaching, the Parties must confer about a possible settlement conference with the Court or assigned Magistrate Judge prior to trial.  (Ibrahim Decl. ¶ 19.)  The Parties advised the Court that they wished to participate in a settlement conference before the Court.  (*Id.*; ECF No. 176.)

The Court conducted the Settlement Conference in its chambers on May 3, 2023.  (Ibrahim Decl. ¶ 20; ECF No. 180)  Attorney Ibrahim traveled from California for the Settlement Conference.  (*Id.*)  With the Court's assistance, the Parties reached a preliminary class action settlement in principle.  (*Id.*)  On May 19, 2023, the Parties filed a Joint Status Report Regarding Settlement Plan.  (ECF No. 179.)  On May 22, 2023, the Court ordered the Parties to file a fully executed final settlement agreement with releases by June 19 and to file a motion for preliminary approval of the class action settlement by July 3.  (ECF No. 180.)

Between May 22 and June 19, the Parties negotiated all the detailed terms and conditions of a written settlement agreement and release.  (Ibrahim Decl., ¶ 21.)  On June 19, the Parties finalized and executed the Settlement and filed same with the Court.  (*Id.*; ECF No. 181-1.)  The material terms of the Settlement Agreement are described below in the next section.

### E.    The Court Granted Preliminary Approval of the Settlement

On July 6, 2023, the Court entered a detailed order granting the parties' Joint Motion for Preliminary Approval of Class Action Settlement, Notice, and Class Counsel's Attorneys' Fees. (ECF No. 183.)  The Court entered an amended order on July 11, 2023.  (ECF No. 184.)  The Court certified the Settlement Class, finding that Plaintiff established ascertainability, numerosity, commonality, typicality, adequacy of class representative Treviso and Class Counsel, predominance, and superiority. (*Id.* at 2-3.)  The Court found that Mr. Treviso adequately represented the Class and that the Settlement was negotiated at arms-length.  (*Id.* at 4.)  The Court also found, on a preliminary basis, that the Settlement appeared to be fair, reasonable, and adequate. (*Id.*)  With regards to fees and costs, the Court found that "[a]lthough the Court will decide the amount of attorneys' fees and costs to be awarded to Class Counsel, along with Mr. Treviso's service award, at final approval, the proposed amounts sought do not appear to be excessive and

appear to the Court to be reasonable in amount in light of the length of this case, the work that has had to be performed in this litigation, and the result achieved for the Settlement Class."  (*Id.* at 5.) In the remainder of the order, the Court described the reasons why it approved the class notice plan, the procedures for class members to participate in the Settlement, the procedures for opting out of and objecting to the Settlement, and the procedures for obtaining final approval and seeking an award of attorneys' fees and costs.  (*Id.* at 5-11.)

## III.  MATERIAL TERMS OF THE SETTLEMENT

### A.  The Settlement Class

The Settlement defines the class whose claims are being resolved as "all persons who paid for and/or acquired tickets to the 2016 NFL Hall of Fame Game, excluding Reimbursed Class Members, any judge who presides over this action, as well as past and present employees, officers and directors of Defendant."  (Settlement at § 1.27.)  "Reimbursed Class Members" refers to ticketholders who settled their claims with Defendant by "accept[ing] reimbursement from Defendant by submitting completed copies of 'The 2016 Pro Football Hall of Fame Game Reimbursement Election Form' to Defendant."  (Settlement at § 1.25.)

### B.  Monetary Benefits to the Class

The total "Monetary Benefit" that Defendant is required to pay under the Settlement is $750,000.  (Settlement at § 1.15.)  As described below, this will cover all claims for reimbursement of expenses to attend the Game by Settlement Class Members, attorneys' fees and costs, claims administration costs, a service award to the class representative, Mr. Treviso, and any funds paid to the designated *cy pres* recipient for funds not awarded to any of the above categories. (Settlement at §§ 3.1-3.2.)

Under the Settlement, Settlement Class Members are eligible to submit a claim to be reimbursed for certain expenses they incurred to attend the Game.  (Settlement at § 5.1.)  They may choose either to be reimbursed for their "Documented Expenses" (Option A) or "Undocumented Expenses" (Option B).  (Settlement at § 5.1.1-5.1.2.)

1.     Option A – Reimbursement for Documented Expenses

Under Option A, Settlement Class Members shall be compensated for the following expenses if they submit a timely and valid claim form with required supporting documentation:

(i)     **Tickets.**  The actual documented amount spent by Settlement Class Members to purchase one or more ticket(s) to the Game, including processing, shipping and handling, and pre-sale reservation fees, up to a maximum of $250 per ticket.

(ii)     **Transportation (Long Distance).**  The actual documented amount spent by Settlement Class Members on airfare, train fare, or bus fare, up to a maximum of $600 per person.

(iii)     **Hotel/Lodging.**  The actual documented amount spent by Settlement Class Members for hotel or other lodging costs for the Game incurred for room, Internet, parking and tax for no more than two (2) nights up to a maximum of $289 per night per room or unit.

(iv)     **Ground Transportation.**  The actual documented amount spent by Settlement Class Members for ground transportation to and from an airport in Cleveland, Canton, or nearby areas to be transported to Canton, up to a maximum of $100 per person. Compensable ground transportation shall include rental car expenses, taxis and ride share (e.g., Uber, Lyft), shuttle buses and vans, and private car services.

(v)     **Mileage.**  For those Settlement Class Members who drove to the Canton area to attend the Game in their own vehicle, the roundtrip mileage based on 2016 mileage reimbursement rates approved by the Internal Revenue Service from the Settlement Class Member's residence to Tom Benson Stadium in Canton, Ohio, as computed by Google Maps.

(vi)     **Parking.**  The actual documented amount spent by Settlement Class Members for parking for the Game, up to a maximum of $50 per vehicle.

(Settlement at § 5.1.1(a).)

Settlement Class Members, however, may not seek compensation for any other categories of expenses or compensation, such as food and beverage, entertainment, souvenirs, gifts, lost earnings or vacation time, or emotional distress.  (Settlement at § 5.1.1(b).)  As noted, Settlement Class Members seeking reimbursement under Option A must timely submit a claim form

"accompanied by documentation sufficient to prove that the Settlement Class Member actually spent funds for" the expenses claimed.  (Settlement at § 5.1.1(c).)  Examples of such documentation include invoices, receipts, bills, e-mail purchase or order confirmations, credit card statements, bank statements, and screen shots of purchase confirmations.  (*Id.*)

2.    <u>Option B – Reimbursement for Undocumented Expenses</u>

Option B allows for Settlement Class Members who do not have possession of documentation to substantiate their expenditures to attend the Game to nevertheless obtain compensation.  (Settlement at § 5.1.2.). Settlement Class Members who submit a timely and valid claim form are eligible to receive compensation for:

(i)    The face value price of the Game ticket, plus processing and shipping and handling fees and pre-sale reservation fees paid directly to the Hall of Fame.

(ii)    An additional fixed amount of $300 per Settlement Class Member.

(Settlement at § 5.1.2(a).)  As with Option A, Settlement Class Members may not seek any other form of reimbursement or compensation.  (Settlement at § 5.1.2(b).)

Importantly, although Option B claimants need not submit supporting documentation to substantiate their expenditures, they nevertheless need to provide some documented proof that they purchased or acquired one or more tickets to the Game.  (Settlement at § 5.1.2(c).)  This may include "any form or type of documentation" demonstrating that the Settlement Class Member "purchased a ticket, possessed a ticket, and/or was present inside or near Tom Benson Hall of Fame Stadium for the Game," such as "a copy or photograph of the ticket, an e-mail confirmation of a ticket purchase or receipt of a ticket, or a photograph of the Settlement Class Member inside the stadium for the Game."  (*Id.*)

**C.  The Claims Process**

The process for submitting a claim form is designed to be as simple and convenient as possible.  The Claims Administrator will have discretion to determine whether a claim is valid and should be paid by verifying (1) the claimant is a Settlement Class Member, (2) the claim is timely, (3) the claimant has completed the claim form with supporting documentation, and (4) "the

9

information submitted would lead a reasonable person to conclude the claimant has suffered the claimed losses arising out of the cancellation of the Game." (Settlement at § 5.3.) Claims may be submitted online or by mail and must be submitted no later than sixty (60) days from the date of dissemination of e-mail notice, text message notice, or postcard notice, whichever is latest. (Settlement at § 5.2.) Payments of verified claims are to be paid within fourteen (14) days of the date the settlement receives final approval and objections and appeals, if any, are resolved. (Settlement at § 5.8.) Class Members may choose to receive their payments via electronic means (e.g., PayPal, Venmo, Zelle) or paper check. (Settlement at § 5.9.)

If the total value of all verified claims exceeds the "Net Settlement Amount," then the amount paid on each verified claim will be reduced equally for all Settlement Class Members on a pro-rata basis. (Settlement at § 5.11.) "Net Settlement Amount" refers to the total "Monetary Benefit" (i.e., $750,000) less the amounts the Court actually awards for attorneys' fees and costs, notice and administration costs, the service award to Plaintiff (i.e., the "Class Representative Enhancement Payment"), and any amounts not awarded to *cy pres*. (Settlement at § 1.16.)

### D. Opt-Outs and Objections

Settlement Class Members may opt-out of the Settlement by submitting an opt-out request form online or by mail within sixty (60) days from the date of dissemination to the Settlement Class of e-mail notice, text message notice, or postcard notice, whichever is latest. (Settlement at § 6.1.) Settlement Class Members may object by the same deadline by filing and mailing a written objection in accordance with the requirements set forth in section 7.2 of the Settlement and section 9 of the full class notice that will be posted on the settlement website. (Settlement at §§ 7.1-7.3, Exhibit D.)

### D. Claims Administration Costs, Attorneys' Fees and Litigation Costs, and the Class Representative Enhancement Payment

The Parties agree that the actual notice and administration costs to disseminate class notice and administer claims, up to $100,000, shall be paid from the "Monetary Benefit" (i.e., $750,000). (Settlement at § 3.1.2.)

The Parties also agree that Class Counsel may apply to the Court for an award of reasonable attorneys' fees not to exceed $187,500, which is 25% of the "Monetary Benefit" (i.e., $750,000) of the Settlement.  (Settlement at § 3.1.3.)  In addition, Class Counsel may apply to the Court for an award of costs incurred up to $100,000 (which includes the cost incurred prior to the May 4, 2023 Settlement Conference to disseminate class notice of the trial date that had been scheduled to commence on June 5, 2023).  (*Id.*)  Defendant agrees it will not oppose this request.  (*Id.*)

Defendant also agrees not to oppose Class Counsel's request for payment of $5,000 to the class representative as a service award or "Class Representative Enhancement Payment." (Settlement at § 3.1.4.)

In the event the Court does not award the full amount requested of attorneys' fees and costs or the Class Representative Enhancement Payment, no amount shall revert back to Defendant; rather, any unawarded benefits shall be available for distribution to the *cy pres* beneficiary designated by the Parties, the Stark County Domestic Violence Project.  (Settlement at §§ 1.12, 3.1.3.)

Similarly, if the total value of all verified claims submitted by Settlement Class Members is *less* than the Net Settlement Amount (i.e., $750,000 minus the amounts described above in this section), any remaining amount available to pay verified claims shall be paid to the *cy pres* beneficiary.  (Settlement at § 3.1.1.)

### E.  Release and Dismissal of All Claims

The Settlement contains a comprehensive mutual waiver, release, and dismissal of claims. (Settlement at §§ 10.1-10.4.)  Upon final approval, the Settlement contemplates entry of final judgment wherein this action shall be dismissed with prejudice as to Defendant and shall incorporate the terms of the release of the Settlement.  (Settlement at § 10.4.)

## IV.  EXECUTION OF THE NOTICE PLAN AND THE REACTION OF THE CLASS

The Court appointed CPT Group, Inc. ("CPT") as the Settlement Administrator in connection with the Settlement.  (ECF No. 184 at 5-6.)  CPT executed on the class notice plan outlined in the Settlement and approved by the Court, which consists of (1) direct mail postcard

notice, (2) e-mail notice, (3) text message notice, (4) supplemental notice via social media, digital marketing, and other means, (5) issuance of a press release, (6) long-form notice posted on a dedicated class settlement website, and (7) notice to public officials in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(b). (Green Decl., ¶¶ 4-5.)

CPT directly reached 97% of potential Settlement Class Members for whom Defendant provided a valid e-mail address, 94.5% of those for whom Defendant provided a mailing address, and sent text messages to all 541 unique phone numbers for whom Defendant provided a phone number.  (Green Decl., ¶¶ 9-13, 18.)  The supplemental notice campaign was also successful.  The digital and social media campaign resulted in 5,080,887 viewable impressions on mobile and desktop devices, prompting 7,774 clicks to the Settlement website.  (Green Decl., ¶ 16.)  The total potential audience exposed to the press release was approximately 229.1 million, resulting in 2,578 views of the release and 102 clicks to the Settlement website.  (*Id.*)

The reaction of the class to the terms of the Settlement has been very favorable.  As of the date of filing this Motion, Plaintiff and CPT targeted approximately 623 potential Settlement Class Members from the list provided by Defendant.  Plaintiff is pleased to report that CPT has received zero (0) requests for exclusion, and CPT and Class Counsel have received zero (0) objections to the Settlement.  (Green Decl., ¶¶ 27-28; Ibrahim Decl., ¶ 30.)  Moreover, CPT has received 2,239 claim forms consisting of 382 claims for Documented Expenses (Option A) and 1,784 claim forms for reimbursement of Undocumented Expenses (Option B).  (Green Decl., ¶ 20.)

CPT is currently in the process of reviewing the claims submitted to determine which ones are valid and which ones should be rejected.  (*Id.*, ¶¶ 20-26.)  This process includes making sure that claims submitted have acceptable documentation and proof as required by the Settlement Agreement, that claimants have not previously settled with Defendant, and that claims submitted are not fraudulent.  (*Id.*, ¶ 19.)  CPT anticipates being able to provide an update to the Court prior to the final approval hearing.  (*Id.*, ¶ 26.)  But although the final valid claims count is still pending, based on the information currently available, it is anticipated that the final valid claims rate will be high than typical claims rates seen by CPT in its experience in similar matters.  (*Id.*)  This reflects

that the notice plan was successful in reaching Settlement Class Members and they found the benefits available under the Settlement to be appealing. (*Id.*)

## V. THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS SETTLEMENT

### A. The Settlement Class Should Be Certified

In analyzing whether to grant final approval of a class settlement, the Court must first decide whether to certify the Settlement Class. *See* Fed. R. Civ. P. 23(e)(1), Adv. Comm. Notes, 2018 Amendments ("The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement.") Plaintiff must show that: (i) the class is too numerous for joinder, (ii) there are legal or factual questions common to the entire class, (iii) the class representatives' claims are typical of the class, and (iv) they will adequately represent the class' interests. *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *2 (N.D. Ohio Aug. 12, 2019). Further, because Plaintiff seeks Rule 23(b)(3) certification, he must show that common questions predominate over individualized ones and proceeding as a class is superior to other methods. But in a "request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997)

Here, the Court has already addressed certification of the Settlement Class in its order granting preliminary approval of the Settlement and concluded that all requirements have been satisfied. (ECF No. 184 at 2-3.) Plaintiff incorporates herein by this reference the arguments set forth on pages 18 through 21 of his motion for preliminary approval. (*See* ECF No. 182-1 at 18-21.). Nothing has changed since the Court's order in July and, therefore, Plaintiff dispenses with discussing class certification here to avoid redundancy.

### B. The Proposed Settlement is Fair and Reasonable

The Sixth Circuit recognizes there is a "federal policy favoring settlement of class actions[.]" *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*UAW*").

13

Before approving a binding class settlement, the Court must conclude that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Following a December 1, 2018 amendment, Rule 23(e)(2) now instructs courts to consider certain factors when deciding whether the class settlement meets this standard:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

   (i)     the costs, risks, and delay of trial and appeal;

   (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

   (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.[3]

Under the 2018 amendments to Rule 23, the Court must decide whether it "will likely be able to" approve the Settlement by considering these same factors.  Fed. R. Civ. P. 23(e)(1)(B)(i). Plaintiff has thus already briefed these issues for the Court and, by granting preliminary approval, the Court already presumably has determined that Plaintiff has made the necessary showing for final approval.  Plaintiff nevertheless discusses the Rule 23(c)(2) factors below, which weigh decidedly in favor of final approval of the Settlement.

---

[3]  Before this Rule 23(e)(2) amendment, circuit courts had developed their own multi-factor inquiries.  According to the 2018 Amendment's Advisory Committee Notes, so long as courts use the Rule 23(e)(2) factors as the primary framework, courts may still consider circuit-specific factors in the analysis.  In the Sixth Circuit, those factors are "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 632.  Although not technically displaced by the amendments, Plaintiff will not discuss these factors to avoid redundancy as they are directly or indirectly discussed in applying the factors from Rule 23(e)(2).

      1.      <u>The Class Is Adequately Represented by Plaintiff and Counsel</u>

The first fairness factor under Rule 23(e)(2) is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

Here, the class representative and Class Counsel have more than adequately represented the Settlement Class.  Mr. Treviso, the class representative, has cooperated in discovery by assisting with responding to Defendant's written discovery, producing responsive documents, and sitting for his deposition.  (ECF No. 182-2 (Treviso Decl.) at ¶ 9.)  He has been involved and kept up to date on all aspects of the case, including the settlement negotiations in this case and review of the Settlement Agreement.  (*Id.*, ¶¶ 8, 11.)  Perhaps most importantly, Mr. Treviso has patiently stuck with this case despite the passage of more than seven years since the Game and filing of this case, and more than five years since he became the putative class representative.  Despite the long wait, Mr. Treviso even made himself ready and available to appear at the trial of this case in June 2023 had the case not settled.  (Ibrahim Decl., ¶ 23.)

Similarly, Class Counsel have also vigorously prosecuted this case on behalf of the Settlement Class.  (Ibrahim Decl., ¶¶ 8-21; Cullers Decl., ¶¶ 4-6.)  Their efforts have included participating in propounding and responding to written discovery, reviewing documents produced and assisting with Plaintiff's document production, pursuing and ultimately obtaining class certification of a liability class, and actively engaging in multiple settlement negotiations.  (*Id.*)  Class Counsel also advanced significant costs to prosecute this action, including over $60,000 alone to pay for class notice of the court's certification order and trial date. (Cullers Decl., ¶ 8; Ibrahim Decl., ¶ 17.)  Class Counsel were also prepared to mobilize to try this case had the case not settled at the May 3, 2023 Settlement Conference.  (Ibrahim Decl., ¶ 22; Cullers Decl., ¶ 5.)

Moreover, Class Counsel has now been successful in obtaining a settlement that far exceeds the benefits the Hall of Fame originally offered to fans—including, among other things, compensation for airfare or other long-distance travel expenses to attend the Game, two (as opposed to one) night hotel or lodging expenses, ground transportation expenses, and the actual price paid for tickets (as opposed to merely the face value).  Class Counsel also overcame the

difficulties associated with prior class counsel dropping out of the case by stepping up to continue with the prosecution of the case, thereby avoiding the catastrophe of the Settlement Class being completely abandoned.  (*See* ECF Nos. 135, 141.)

This Court has already approved of the efforts and qualifications of Mr. Treviso and Class Counsel in its order granting class certification and formally appointing them as the class representative and class counsel (ECF No. 154), and in its order granting preliminary approval of the Settlement.  (ECF 184 at 3-5.)

2. <u>The Proposal Was Negotiated at Arm's Length</u>

The second Rule 23(e)(2) factor looks at whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This is "described as [a] 'procedural' concern[ ], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes.

This factor is easily met.  The Court itself oversaw the arms-length settlement negotiations at the May 3, 2023 Settlement Conference.  (Ibrahim Decl., ¶ 20.)  Further, the Court has already found in its preliminary approval order that "the proposal was negotiated at arms-length."  (ECF No. 184 at 4.)

3. <u>The Relief for the Class is Adequate Under Rule 23(e)(2)(C)</u>

Under the third Rule 23(e)(2) factor, the Court must consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Comm. Notes. As shown below, the Settlement

16

satisfies these factors.

        (a)      *The costs, risks, and delay of trial and appeal*

A "central concern" when evaluating a proposed class action settlement "relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes.

The costs and risks involved of pursuing a litigated outcome in this case are clear.  Plaintiff would have had to try the case.  Although confident the Court and/or the jury would have found Defendant in breach, the outcome of the damage phase of the litigation was less certain.  Defendant likely would have lodged an array of procedural and substantive impediments to each individual Settlement Class Member being able to recover expenses they each incurred in connection with the Game.  Plaintiff anticipated Defendant would try to make it as difficult as possible for each claimant to make a claim and succeed in making claims.  Any approach would also be costly as it would have likely required the retention of a special master being paid by the hour to administer individual claims.  Even if successful, Defendant would have retained its appeal rights to the Sixth Circuit, where it may have pursued various arguments for why any approach taken in the damages phase prejudiced its rights.

In contrast, now having obtained the Settlement, class members were able to submit claims for nearly all compensatory damages they would have been able to obtain had the case been tried.  Under Option A, class members were able to submit claims for their actual ticket costs (not merely face value), two-nights' lodging expenses, airfare or other transportation expenses, ground transportation, and parking, subject only to reasonable caps on amounts to be awarded for certain categories.  Indeed, Class Counsel was also able to negotiate a $300 fixed cash payment and face value of class members' tickets under Option B for those individuals who did not have documentation to substantiate their expenditures.[4]  These claims will be paid following final

---

[4] Although Settlement Class Members' claims may be reduced equally for all Settlement Class Members on a pro-rata basis if the total value of all verified claims exceeds the "Net Settlement Amount" (Settlement at § 5.11), even if this occurs, Settlement Class Members are still better off

approval without the prospect of cross-examination or challenges by Defendant's counsel, or the uncertainty of post-trial motions or an appeal.

Accordingly, the Settlement significantly surpasses what Defendant was willing to offer, and had offered, Settlement Class Members by way of its 2016 reimbursement plan.  This factor, therefore, weighs in favor of preliminary approval.

(b)   <em>The claims process and distribution of relief are effective</em>

The Court must next consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C) and 2018 Advisory Comm. Notes. Additionally, "the court should be alert to whether the claims process is unduly demanding." *Id.*

Here, the Parties have devised a compensation plan and claims process that is designed to be as simple as possible to obtain substantial compensation for expenses they incurred in connection with attending the Game.  The success of their plan and claims process is evidenced the overwhelmingly favorable response of Settlement Class Members.  Defendant estimated there were 3,580 individuals remaining in the Class.  The Class responded very favorably to the notice disseminated by CPT.  CPT has received 382 Option A claims and 1,784 Option B claims.  This can be attributed in substantial part to the flexibility given to Settlement Class Members to choose between making a claim for actual expenses based on submitting available documentation to substantiate those expenses (Option A) or making a simpler claim for a fixed cash payment and face value of their tickets for those who no longer have supporting documentation (Option B).  It was also easy for Settlement Class Members to make claims by being able to submit them online and having the option to be paid electronically by Zelle, Venmo, or PayPal.  In short, the Parties have worked together to make it as easy and as flexible as possible for fans who did not accept a reimbursement from the Hall of Fame to make a claim and receive compensation.

---

settling this case to obtain guaranteed payment instead of having to overcome the risks and uncertainties of winning at trial and successfully prosecuting an appeal.

(c)     *The attorneys' fee request is reasonable*

The Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).  As explained below in section VI, *infra*, Class Counsel's request for attorneys' fees is reasonable and the amount sought is justified.

4.     The Proposal Treats Class Members Equitably

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

Here, class members *are* treated equitably relative to each other.  As long as they had a ticket and did not settle with the Hall of Fame by accepting the Hall of Fame's voluntary reimbursement package, they each may benefit equally under the Settlement.  Each of them, regardless of what type of ticket they had, how much they spent on the ticket (even if they paid nothing for their ticket), or how they got to the Game, were entitled to make a claim under the Settlement for the expenses they actually incurred to travel to and attend the Game.  (*See* Settlement at §§ 5.1.1-5.1.2, 5.3.)

That the Settlement provides for the class representative to receive a $5,000 service award does not grant him preferential treatment.  Rather, service awards are accepted in the Sixth Circuit as "awards to class representatives for their often extensive involvement with a lawsuit."  *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).  As discussed below in section VII, *infra*, the service award in this case to Mr. Treviso is fully justified and is not excessive.

For all these reasons, the Court should find Plaintiff has satisfied all factors under Rule 23(e)(2) for final approval of the class settlement.

**C.     The Notice Plan Should Be Approved.**

Finally, the Court must consider whether the Class received adequate notice of the

settlement.  *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *4 (N.D. Ohio Aug. 12, 2019).  Rule 23 and due process require "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

To begin with, the Court considered Plaintiff's proposed notice program and already found that it met "the requirements of Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto."  (ECF No. 184 at 5.)  As in the concurrently filed Declaration of Julie N. Green, CPT simply executed on this approved plan.  (Green Decl., ¶¶ 4-5, 8-18.)  For this initial reason, the Court should find it satisfies Rule 23 and due process.

More specifically, the notice plan outlined in the Settlement and approved by the Court consisted of (1) direct mail postcard notice, (2) e-mail notice, (3) text message notice, (4) supplemental notice via social media, digital marketing, and other means, (5) issuance of a press release, (6) long-form notice posted on a dedicated class settlement website, and (7) notice to public officials in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(b). (Green Decl., ¶¶ 4-5.)

CPT directly reached 97% of potential Settlement Class Members for whom Defendant provided a valid e-mail address, 94.5% of those for whom Defendant provided a mailing address, and sent text messages to all 541 unique phone numbers for whom Defendant provided a phone number.  (Green Decl., ¶¶ 9-13, 18.)

The supplemental notice campaign was also successful.  The digital and social media campaign resulted in 5,080,887 viewable impressions on mobile and desktop devices, prompting 7,774 clicks to the Settlement website.  (Green Decl., ¶ 16.)  The total potential audience exposed to the press release was approximately 229.1 million, resulting in 2,578 views of the release and 102 clicks to the Settlement website.  (*Id.*)

The reaction of the class to the terms of the Settlement has been very favorable.  As of the date of filing this Motion, Plaintiff and CPT targeted approximately 623 potential Settlement Class

Members from the list provided by Defendant.  Plaintiff is pleased to report that CPT has received zero (0) requests for exclusion, and CPT and Class Counsel have received zero (0) objections to the Settlement.  (Green Decl., ¶¶ 27-28; Ibrahim Decl., ¶ 30.)  Moreover, CPT has received 2,239 claim forms.  (Green Decl., ¶ 20.)  Although CPT is still reviewing and processing claims, the submission of 2,239 claims (with many of them being made on behalf of multiple class members), seeing as the Parties estimated 3,580 individuals remain in the Class, this response is reflective of a successful notice program and implementation.  (*Id.*, ¶ 26.)

## VI.   THE COURT SHOULD AWARD CLASS COUNSEL $187,500 IN ATTORNEYS' FEES AND $71,476 IN COSTS

As described above, the Parties agreed under the Settlement that Class Counsel may seek an award of attorneys' fees not to exceed $187,500, which is 25% of the "Monetary Benefit" (i.e., $750,000) of the Settlement.  (Settlement at § 3.1.3.)  In addition, Class Counsel may apply to the Court for an award of costs incurred up to $100,000 (which includes the cost incurred prior to the May 4, 2023 Settlement Conference to disseminate class notice of the trial date that had been scheduled to commence on June 5, 2023).  (*Id.*)  Defendant agrees it will not oppose this request. (*Id.*)

Plaintiff seeks an award of $187,500 in attorneys' fees and $71,476.46 in costs.  As explained below, the Court should approve these requests.

### A.   Legal Standard on Motion for Attorneys' Fees and Costs

Courts in the Sixth Circuit "employ two methods for calculating attorneys' fees and for evaluating the reasonableness of those fees:  the percentage-of-the-fund method and the lodestar method."  *In Re Flint Water Cases*, 63 F.4th 486, 495 (6th Cir. 2023).  "[T]he determination of which method is appropriate in any given case will depend upon its circumstances."  *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 517 (6th Cir. 1993).  District courts within the Sixth Circuit have the discretion to use either method; "[t]he overriding requirement is that the award 'be reasonable under the circumstances.'"  *Bailey v. AK Steel Corp.*, No. 1:06–cv–468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008) (quoting *Rawlings*, 9 F.3d at 516).

The percentage-of-the-fund method is preferred in common fund cases.  *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1010 (N.D. Ohio 2016); *see also*, *e.g.*, *Manners v. American General Life Ins. Co.*, No. Civ. A. 3–98–0266, 1999 WL 33581944, at *29 (M.D. Tenn. Aug.10, 1999) ("The preferred approach to calculating attorneys' fees to be awarded in a common benefit case is as a percentage of the class benefit.")

In determining appropriate attorneys' fees, courts often consider: "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."  *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016).

Here, as explained below, the amount of fees requested is justifiable under either method.

**B.      The Requested Attorneys' Fees Should Be Awarded Under the Percentage-of-the Fund Method**

Class Counsel requests a total award of $187,500 in attorneys' fees.  This amounts to only 25 percent of the common fund, which is an acceptable benchmark for a typical fee claim in the Sixth Circuit.  *Polyurethane Foam*, 168 F. Supp. 3d at 1013 ("In the Sixth Circuit, [w]hen using a percentage-of-the-fund approach to calculate attorneys' fees, twenty-five percent has traditionally been the benchmark standard, with the ordinary range for attorney's fees between 20-30%.") (quotations omitted); *Johnson v. Midwest Logistics Systems, Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, *6 (S.D. Ohio May 24, 2013) ("[E]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.") (quoting Newberg on Class Actions § 14.6 (4th ed.))

The requested fee should also be awarded because Class Counsel's work has achieved valuable benefits for the Class.  Under the Settlement, Settlement Class Members are entitled to reimbursement for their actual ticket cost to attend the Game, as well as nearly all their expenses to attend the Game.  This includes two nights' hotel/lodging, airfare, ground transportation, and

parking.  This compensation exceeds that which was available under Defendant's 2016 voluntary reimbursement program and gets the Class very close to what they would have been able to obtain at trial.  Settlement Class Members, in fact, may also be reimbursed a fixed amount of $300 and the face value of their ticket even if they have no longer have receipts to substantiate their expenses. This is an excellent outcome for the Class.  Class Counsel held out to the very end to obtain this result, even readying themselves for trial to fight for the Class' interests.

Class Counsel undertook significant risk in achieving this result.  It has now been more than seven years since this case was filed.  Mr. Ibrahim has been involved in this case from the beginning and continued litigating the matter in April 2019 with his own firm under difficult circumstances considering the issues surrounding his prior employer.  (Ibrahim Decl., ¶ 25.)  The Becker Law Firm has been co-counsel of record since April 2017.  During this time, Class Counsel have litigated this case on a contingency basis with no guarantee of any victory or compensation. The two firms have advanced substantial costs of $71,476.46—again, with no assurance that they would be able to recover these expenses.  Class Counsel were prepared to take on the extremely risky prospect of incurring even more costs to try the case, facing great uncertainty and complexity with regards to how the damages phase would be structured and handled by the Court.

Furthermore, $187,500 is much less than what Class Counsel would be able to recover under a lodestar calculation, as discussed *infra*.  Indeed, in a recent class action, the district court in California approved an attorneys' fee request by attorney Ibrahim's firm based on a lodestar figure using $850 per hour, and a lodestar multiplier of 1.63.  (Ibrahim Decl. ¶ 5.)  Given attorney Ibrahim's and Cullers' extensive trial and complex litigation experience (Ibrahim Decl., ¶¶ 2-7; Cullers Decl., ¶¶ 2-3), including in class actions, $187,500 is an extraordinarily modest and reasonable request.

For these reasons, the Court should award $187,500 in attorneys' fees to Class Counsel.

### C.    The Requested Fees and Costs Are Justified Under a Lodestar Cross-Check

Because Class Counsel's requested fees are easily justified under the percentage-of-the-fund approach, which as noted, is the preferred method of calculating class counsel attorneys' fees

under the case law, the Court need not conduct any further analysis under the lodestar method and should simply award the amount requested.  See, e.g., *Robles v. Comtrak Logistics, Inc.*, No. 15-CV-2228, 2022 WL 17672639, at *11 (W.D. Tenn. Dec. 14, 2022) ("Courts employing the percentage-of-the-fund approach are not required to conduct a crosscheck using the lodestar method."); *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *7 (S.D. Ohio Sept. 9, 2016) ("Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional[.]")

But even if the Court decided to conduct a lodestar cross-check, Class Counsel's fee request is fully justified based on the voluminous hours put in by counsel over seven years, counsels' reasonable hourly rates based on their respective skill levels and experience, the costs advanced by counsel, and the risks to counsel of pursuing and maintaining this litigation.

As a preliminary matter, it is important for the Court to note that "[i]n contrast to employing the lodestar method in full, when using a lodestar cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Johnson,* 2013 WL 2295880, at *6 (quoting *In re Cardinal Health Inc. Securities Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (internal quotation marks omitted); *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *2 n.3 (E.D. Tenn. May 17, 2013) ("Unlike the situation when the Court employs the lodestar method in full, "the hours documented by counsel need not be exhaustively scrutinized by the district court" where a lodestar cross-check is used.")

Turning to the hours worked by Class Counsel, Mr. Ibrahim estimates that since his firm took over the primary responsibility for litigating the case on behalf of the Class in April 2019, he has spent 200.8 hours on this matter.  (Ibrahim Decl., ¶ 27, Ex. A.)  Mr. Ibrahim's redacted timesheets describing his work is attached as Exhibit A to his declaration.  In addition to these hours, Mr. Ibrahim estimates that he spent approximately 325 hours prior to April 2019 on this case and that between now and the final approval hearing, he will need to spend an additional 8 hours.  (*Id.*, ¶¶ 28-29, Ex. A.)  This yields a total number of hours of 533.8.

With regards to the hourly rate for Mr. Ibrahim, as noted, the U.S. district court in Los

Angeles recently found that $850 per hour in a consumer class action was reasonable in computing his fee award, and, in fact, found that a 1.61 lodestar multiplier was appropriate.  (Ibrahim Decl., ¶ 26.)  Even if the Court here found a lesser hourly rate of $550 for Mr. Ibrahim's experience and skill was more appropriate for this jurisdiction, Mr. Ibrahim's lodestar, before applying a multiplier, would be $293,590.  (*Id.*, ¶¶ 27-29.)  This hourly rate is reasonable given Mr. Ibrahim's 18 years of experience as a litigator in complex commercial litigation matters and class actions, which includes two multi-million-dollar verdicts in 2022.  (Ibrahim Decl., ¶¶ 2-6; Cullers Decl., ¶¶ 2-3.)

Mr. Cullers' firm has been counsel of record in this case since April 25, 2017.  (ECF No. 56.)  Mr. Cullers' declaration includes a table in which he provides an estimate of the total number of hours spent on various categories of tasks in the litigation over the last 6 ½ years, which comes out to approximately 160 hours.  (Cullers Decl., ¶ 6.)

Based on Mr. Cullers' 30-plus years of experience as a trial lawyer in which he has obtained substantial results for his clients through jury verdicts and settlements, his hourly rate for work done on this matter is $550.  (Cullers Decl., ¶¶ 2-3, 7.)  Mr. Cullers is familiar with rates charged by attorneys in Cleveland with similar levels of skill and experience and it is therefore his belief that this rate is reasonable and consistent with those of his peers.  (*Id.*)

Based on Mr. Cullers' hours and his hourly rate, Mr. Cullers' lodestar amounts to $88,000.  Class Counsel's total lodestar is therefore $381,590.  (Ibrahim Decl., ¶ 30)   Because this is more than what Class Counsel is seeking by way of attorneys' fees (i.e., resulting in a negative lodestar multiplier of 0.49), Class Counsel's fee request is appropriate even after performing a lodestar cross-check.  (*Id.*)  In sum, Class Counsel's request is extremely reasonable when considering that Class Counsel's work in this case, the result achieved, and the risk they undertook would support a significant lodestar multiplier.  *See Palombaro v. Emery Federal Credit Union*, No. 1:15-cv-792, 2018 WL 5312687, *12 (S.D. Ohio Oct. 25, 2018) (finding "that a 1.81 multiplier to the lodestar is within the range of multipliers this Court and others have found reasonable"); *Feiertag,* 2016 WL 4721208, at *7 ("Awards of common-fund attorney fees in amounts two to three-times greater

than the lodestar have been found reasonable.").

### C. Class Counsel's Out-of-Pocket Expenses are Reasonable and Compensable

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement*." Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 3:15-CV-2673, 2018 WL 4539287, at \*5 (N.D. Ohio Sept. 21, 2018) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D 508, 534–35 (E.D. Mich. 2003)).  "In determining what are reasonable out-of-pocket litigation expenses, courts should consider what counsel would charge their hourly fee-paying clients." *Id.* "Reasonable expenses include the costs of document production, consulting with experts, travel, and other litigation-related expenses." *Id.*

Here, Class Counsel has incurred $71,476.46 in litigation costs and expenses, including (1) $60,674.44 in expenses to CPT Group for giving notice to class members of class certification and of the trial in this matter, (2) $1,833.33 in private mediation fees, (3) $5,688.58 in court reporter fees, (4) $925.99 in miscellaneous costs (e.g., messenger and courier services, etc.), and (5) $2,354.12 in travel costs for Mr. Ibrahim to travel to Cleveland for the 2022 private mediation and 2023 settlement conference.  (Cullers Decl., ¶ 8; Ibrahim Decl., ¶ 31.)  The bulk of these costs were to pay the class administration firm to provide notice of class certification and the trial in this matter, which are costs necessitated by Rule 23(c)(2) that could not be avoided.  All these costs were advanced by Class Counsel without any assurance of success or recoupment of costs, magnifying the risk incurred.  Accordingly, the Court should approve the costs requested.

### VII. THE COURT SHOULD APPROVE THE PROPOSED SERVICE AWARD OF $5,000 TO CLASS REPRESENTATIVE TREVISO

As noted above, service awards are accepted in the Sixth Circuit as "awards to class representatives for their often extensive involvement with a lawsuit." *Hadix,* 322 F.3d at 897. They "encourag[e] members of a class to become class representatives and reward[ ] individual efforts." *Id.* "Numerous courts have authorized such awards as 'efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on

behalf of the class.'"  *Carr v. Bob Evans Farms, Inc.*, No. 1:17-CV-1875, 2018 WL 7508650, at *3 (N.D. Ohio July 27, 2018) (quoting *Hadix*, 322 F.3d at 897); *see also Lonardo v. Travelers Indem. Co,*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) ("Courts within the Sixth Circuit . . . recognize that, in common fund cases . . . where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled by virtue of class membership alone.")

The proposed $5,000 award to Mr. Treviso is well within the range of awards approved by the Sixth Circuit.  *See, e.g.*, *Liberte Capital Group v. Capwill*, No. 5:99-cv-818, 2007 WL 2492461, at *1 (N.D. Ohio Aug. 29, 2007) ("Incentive awards, where appropriate, generally range from a few thousand dollars to $85,000"); Newberg on Class Actions § 17:8 (5th ed. 2023) (noting a 2006 to 2011 study that showed a median incentive award of $5,250).

In addition, Mr. Treviso should be awarded the requested service award because he has been patient and persistent with remaining the class representative even though the case is now more than seven years old.  He actively participated in discovery, including by sitting for a deposition, providing written discovery responses, and producing documents.  (ECF No. 182-2 (Treviso Decl.) at ¶¶ 7-9, 11; Ibrahim Decl. ¶ 23.)  He also was informed on the progress of the litigation by e-mails and phone calls, including with regards to developments related to mediation and settlement, and negotiation of the terms and conditions of the Settlement Agreement in this case.  (Ibrahim Decl. ¶ 23.)  Mr. Treviso has also been extremely responsive and cooperative in giving Class Counsel everything they have needed from him for the case, and he took an active interest in all aspects of the case.  (*Id.*)  In the event the case did not settle and went to trial, Mr. Treviso made himself ready and available to appear at the trial in this case in Cleveland.  (*Id.*)

For all these reasons, the Court should approve the $5,000 service award payable to Mr. Treviso.

## VIII.  CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant this Motion

and enter the [Proposed] Final Approval Order and Judgment.

Respectfully submitted on this 20th day of October, 2023.

*/s/ Romney Cullers*
Romney Cullers (0053668)
THE BECKER LAW FIRM
1111 Superior Avenue East, Suite 400
Cleveland, Ohio 44114
Ph: (440) 323-7070
Fax: (440) 323-1879
rcullers@beckerlawlpa.com

*/s/ Ahmed Ibrahim*
Ahmed Ibrahim (*Pro Hac Vice*)
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph: (949) 266-1240
Fax: (949) 266-1280
*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

A copy of the foregoing was served upon the following this 20th day of October 2023 via

electronic mail to:


Scott M. Zurakowski                    Counsel for Defendant National Football
Krugliak Wilkins Griffiths             Museum, Inc. dba Pro Football Hall of Fame
& Dougherty – Canton
4775 Munson Street, NW
Canton, OH 44718
szurakowski@kwgd.com


                                       /s/ Ahmed Ibrahim_____
                                       Ahmed Ibrahim, Esq.