# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| CARMELO TREVISO, Individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL MUSEUM, INC., d/b/a PRO FOOTBALL HALL OF FAME<br><br>Defendant, | CASE NO. 5:17-CV-00472-CAB<br><br>U.S. DISTRICT JUDGE<br>CHRISOPTHER A. BOYKO<br><br>U.S. MAGISTRATE JUDGE<br>JENNIFER DOWDELL ARMSTRONG<br><br>**REPORT AND RECOMMENDATION** |

## I.  INTRODUCTION

Now pending before the Court is Plaintiff's Motion for Final Approval of Class Action Settlement, and for Attorneys' Fees, Costs, and Service Award.  ("Plaintiff's Motion for Final Approval," ECF No. 185.)  On November 8, 2023, Judge Christopher A. Boyko referred this matter to me to conduct a Final Fairness Hearing and to prepare a Report and Recommendation on Plaintiff's Motion for Final Approval.  (ECF No. 186.)

I conducted the Final Fairness Hearing on November 17, 2023.  At the conclusion of that hearing, I ordered Plaintiff to file post-hearing briefing regarding the reasonableness of the settlement.  On December 6, 2023, Plaintiff filed his Supplemental Brief in Support of Motion for Final Approval of Class Action Settlement, and for Attorneys' Fees and Costs, and Service.  ("Supplemental Brief," ECF No. 188.)  For the following reasons, I RECOMMEND that this Court GRANT Plaintiff's Motion for Final Approval and adopt and issue Plaintiff's Proposed Order and Final Judgment. (ECF No. 185-5.)

1

## II.     RELEVANT FACTUAL BACKGROUND

On July 3, 2023, Plaintiff and Defendant filed a Joint Motion for Preliminary Approval of Class Action Settlement, Notice, and Class Counsels' Attorneys' Fees. (ECF No. 182.) At the time of the Preliminary Approval, there were approximately 3,580 ticketholders remaining in the settlement class. (ECF No. 182-1, PageID#3434.) The settlement class consisted of those individuals who did not accept reimbursement from Defendant under the Hall of Fame's 2016 reimbursement program. (*Id.*)

On July 11, 2023, Judge Boyko granted the Joint Motion. (ECF No. 184.) In relevant part, Judge Boyko certified the settlement class and found that Plaintiff had established ascertainability, numerosity, predominance, and superiority. (*Id.* ¶¶2-3.) Judge Boyko also found that Mr. Treviso adequately represented the settlement class, and that the settlement was negotiated at arms-length. (*Id.* ¶4.) Judge Boyko further found, on a preliminary basis, that the settlement appeared to be fair, reasonable, and adequate. (*Id.*) Regarding fees and costs, Judge Boyko found in relevant part that "[a]lthough the Court will decide the amount of attorneys' fees and costs to be awarded to Class Counsel, along with Mr. Treviso's service award, at final approval, the proposed amounts sought do not appear to be excessive and appear to the Court to be reasonable in amount in light of the length of this case, the work that has had to be performed in this litigation, and the result achieved for the Settlement Class." (*Id.* ¶ 5.) In the remainder of the order, Judge Boyko described the reasons why he approved the class notice plan, the procedures for class members to participate in the settlement, the procedures for opting out of and objecting to the settlement, and the procedures for obtaining final approval and seeking an award of attorneys' fees and costs. (*Id.* ¶¶ 5-11.)

On October 20, 2023, Plaintiff filed its Motion for Final Approval. (ECF No. 185.) In his Supplemental Brief following the Final Fairness Hearing, Plaintiff alleged that CPT, the claims

administrator received a total of 2,245 claims. (ECF No. 188-1, ¶6.) CPT subsequently determined that only 68 of these claims were valid. (*Id.*) These 68 claims represented 191 class members of the estimated settlement class of 3,580 individuals. Thus, the claims process resulted in a valid claims rate of 5.34%. (*Id.*)

At the conclusion of the Final Fairness Hearing, I ordered class counsel at the conclusion of the Fairness Hearing to "file a post-hearing brief with citation to controlling case law that addresses the reasonableness of the settlement in light of the low valid claims rate, including but not limited to the class counsel's attorneys' fees and costs." (ECF non-document entry dated 11/17/2023). Class counsel filed his Supplemental Brief on December 6, 2023. (ECF No. 188.) This Report and Recommendation thus addresses only the pertinent factors regarding the reasonableness of class counsel's attorneys' fees and costs in light of the claims rate.

### III. LAW AND ANALYSIS

The Court's approval of a Rule 23 class action settlement occurs in three stages. *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021) (citations omitted). First, the court preliminarily approves the parties' proposed settlement. *Id.* Second, the parties provide class members notice of the proposed settlement. *Id.* Finally, following a hearing, the court issues final approval. *Id.* At this third and final stage, a court determines whether the notice process was sufficient and whether the proposed settlement agreement is fair, reasonable, and adequate. *Harsh v. Kalida Mfg., Inc.*, No. 3:18-cv-2239, 2021 WL 4145720, at *3 (N.D. Ohio Sept. 13, 2021).

#### A. **Approval of the Settlement**

##### 1. *Adequate Representation*

The first fairness factor under Rule 23(e)(2) requires a court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P.

3

23(e)(2)(A). As previously determined by this Court, the class representative and class counsel have performed adequately. (ECF No. 154, PageID#3192-93.) The class representative, Mr. Treviso, cooperated in discovery by responding to Defendant's written discovery, producing responsive documents, and sitting for his deposition. (ECF No. 182-2, ¶9.) Despite the passage of seven years since the game and filing of this case, and more than five years since he became the putative class representative, Mr. Treviso remained in the case. He was prepared to appear at the trial of this case in June 2023 if the case did not settle. (ECF No. 182-3, ¶23.) Similarly, class counsel substantively participated in the discovery process, pursued and obtained class certification of a liability class, and actively engaged in several settlement negotiations. (ECF No. 182-3, ¶¶9-21; ECF No. 182-4, ¶¶4-6.) Accordingly, this factor favors approval.

### 2. *Arm's Length Negotiation*

The parties must negotiate the settlement at arm's length. Fed. R. Civ. P. 23(e)(2)(B). "This inquiry aims to root out … 'collusive settlements.'" 4 Newberg and Rubenstein on Class Actions § 13:50 (6th ed.) This Court has already determined in its preliminary approval order that "the proposal was negotiated at arms-length." (ECF No. 184, ¶9.) Indeed, with the Court's assistance, the parties reached a preliminary class action settlement in principle. Any negotiation over the amount of class counsel's attorneys' fees and costs took place after the parties negotiated the total benefit that Defendant would pay for the Settlement Class. Therefore, Plaintiff satisfied this factor.

### 3. *Adequate Relief*

In assessing whether the relief is adequate, the Court must take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required

4

to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). With these additional factors in mind, I find that the relief provided is adequate.

### a. Costs, Risks, and Delay

The costs, risks, and delay of trial and appeal favor approval. A "central concern" when evaluating a proposed class action settlement "relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), Advisory Comm. Notes. Here, continued litigation presented specific challenges. For example, as class counsel contends, the Court and/or a jury would have found Defendant in breach, but the outcome of the damage phase of the litigation was less certain. Defendants likely would have raised substantive challenges to each individual class member's attempt to recover expenses he or she incurred in connection with the game. And even if Plaintiff prevailed, Defendant would have retained its appeal rights to the Sixth Circuit, where it may have pursued various arguments for why any approach taken in the damages phase prejudiced its rights.

The settlement avoids these obstacles because class members were able to submit claims for almost all compensatory damages that they would have been able to obtain if the case had been tried. Specifically, under Option A, if class members had documentation, they were able to submit claims for their actual ticket costs, two-nights' lodging expenses, airfare or other transportation expenses, ground transportation, and parking. ECF No. 181-1 ("Settlement Agreement"), at § 5.1.1.) And under Option B, individuals who did not have documentation to substantiate their expenditure could receive a $300 fixed cash payment and face value of class members' tickets. (Settlement Agreement, at § 5.1.2.) Thus, this sub-factor favors approval.

5

b. **Effectiveness of Distribution Method**

The settlement's distribution method also supports approval. This consideration requires the Court to ensure that the claims processing (1) facilitates filing legitimate claims and (2) is not unduly demanding. Fed. R. Civ. P. 23(e), Advisory Comm. Notes. Here, the settlement agreement accomplishes both. The agreement provided flexibility to class members to choose between making a claim for actual expenses based on submitting available documentation to substantiate those expenses (Option A) or making a simpler claim for a fixed cash payment and face value of their tickets for those who no longer have supporting documentation (Option B). (Settlement Agreement, at §§ 5.1.1-5.1.2.) The ability to make claims was made easy by the fact that members could submit their claims online and have the option to be paid electronically by Zelle, Venmo, or PayPal. (Settlement Agreement, § 5.9.)

The settlement agreement's low claims rate does not mean that the claims process was not effective. CPT received 2,245 claims during the claims period, and 68 of these claims were deemed to be valid claims for reimbursement. (ECF No. 188-1, ¶6.) A given claim may represent multiple ticketholders, *e.g.,* where one claim is submitted on behalf of a group of family or friends who traveled together for the game, each of whom is a class member. (*Id.*) Thus, the total number of ticketholders/class members represented by the 68 valid claims is 191. (*Id.*) Based on Defendants' estimate of 3,580 class members and valid claims covering 191 class members, the claims rate is 5.34%. (*Id.*) Most of these claims were rejected because, after CPT conducted its multi-layered review process, the claims were deemed to be fraudulent or claimants failed to submit sufficient or relevant documentation to demonstrate the validity of the claim. (*Id.*)

District courts have approved consumer class action settlements with claims rates between three to five percent. *See Munday v. Navy Fed. Credit Union*, 2016 WL 7655807, at *8 n.1 (C.D.

Cal. Sept. 15, 2016) (quoting *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014)) ("The prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (observing that claims rate in consumer class action settlements "rarely exceed seven percent, even with the most extensive notice campaigns"). Indeed, the Sixth Circuit and other federal appellate and district courts have approved settlements with claims rates of 3% or lower. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 WL 4520931, at *5 (6th Cir. May 24, 2018) (affirming approval of class settlement even though response rate of class was less than one percent); *Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) (observing that "a claim rate as low as 3 percent is hardly unusual in consumer class actions"); *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214-15 (W.D. Mo. 2017) (collecting instances of district courts approving settlements "where the claims rate was less than one percent").

Further, a "low response rate is not definitive where, as here, most class members could not be identified through reasonable effort and the notice effort was robust with multiple forms of notice." *In re Packaged Ice Antitrust Litig.*, 2018 WL 4520931, at *5. Class counsel represents that the class list of 633 potential class members provided by Defendant and utilized by CPT to provide class notice consisted of possible ticket buyers based on the best information available to Defendant. (ECF No. 188, PageID#3699-700. This list was not a database of all the estimated 3,580 individuals who attended the game with a ticket and did not accept the Hall of Fame's voluntary reimbursement offer. For example, in some situations, individuals purchased multiple tickets for others to use. (*See* ECF No. 168, PageID#3272, 3274-75.)

To assist with finding the best method to reach ticketholders of the game, Defendant provided Plaintiff and the claims administration with information and documentation it had related

7

to original ticket buyers to the games, as well as a master list of all such ticket buyers that participated in the 2016 reimbursement program. To address these issues, the proposed notice plan indicated that the master list *and* a comprehensive digital and social media campaign would be used to provide adequate notice to ticketholders. This Court found this notice plan "comprehensive and provides the best notice practicable." (ECF No. 172-1, PageID#3322.) This robust notice program included e-mails, text messages, and postcards disseminated to the individuals on the class list, as well as online and on social media through digital marketing and advertising, resulting in a total of 5,080,887 viewable impressions and prompting 7,774 link clicks to view the settlement website. (ECF No. 185-4, ¶¶8-17.)

I agree with class counsel that the number of valid claims obtained was not for a lack of a well-designed and effective notice campaign. Rather, it is the result of this being an approximately seven-year-old case where the parties did not have access to a direct contact list of actual, known class members. As the Sixth Circuit stated in *Gascho v. Global Fitness Holdings, LLC*, the "class plaintiffs' 'right to share the harvest of the suit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of class representatives and their counsel.'" 822 F.3d 269, 282 (6th Cir. 2016).

Finally, Plaintiff correctly points out that the low claim rate does not mean that Defendant will walk away without paying for its breach of contract to its class members. Indeed, the common fund settlement is structured so that Defendant must disgorge the entire $750,000 in funds without any possibility of those funds being returned. The remaining funds amounting to an estimated $283,000 would be paid to a *cy pres* beneficiary, a charitable organization that serves the Stark County community. (Settlement Agreement, at §§ 3.1.1., 3.1.3, 3.1.4, 8.1.2, 8.2.2.) Specifically, Defendant is required to pay those funds to the Stark County Domestic Violence Project, an

organization that "offer[s] safety, compassion, hope, and healing to victims of domestic violence and their families." *About*, Domestic Violence Project, Inc, https://www.dvpi.org/about (last visited February 9, 2024). The program provides transitional housing for individuals and families and evidence-based educational programs in Stark County schools geared towards at-risk youth. *Id.* The parties previously selected the Stark County Domestic Violence Project during the settlement conference conducted by Judge Boyko in May 2023. (*See* ECF non-document entry dated 5/3/23.) Moreover, no class member has objected to this organizational beneficiary. Based on the foregoing reasons, I cannot conclude that the low claims rate renders this class settlement unreasonable.

### c. Attorney's Fees and Timing

Under this factor, the court must also examine the attorneys' fees requested and the timing of their payment. Fed. R. Civ. P. 23(e)(2)(C)(iii). In this case, class counsel seeks $187,500 – 25 percent of the $750,000 common fund benefit. (ECF No. 188, PageID#3703.) Counsel will receive that amount alongside the classes' payment. For the reasons more fully discussed below, I find that the requested attorney's fees, and their timing, do not compromise the adequacy of relief.

### d. Rule 23(e)(3) Agreements

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Here, the settlement agreement is the only such agreement. (ECF No. 181-1.) Accordingly, there is no risk that "related undertakings … may have influenced the terms of the settlement." Fed. R. Civ. P. 23(e)(2), Advisory Comm. Notes. Thus, this sub-factor also supports the adequacy of relief.

#### 4. *Equitable Treatment of Class Members*

The final factor the Court must consider is whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), Advisory Comm. Notes.

In this case, the class members are treated equitably relative to each other. If a class member had a ticket and did not settle with the Hall of Fame by accepting the Hall of Fame's voluntary reimbursement package, each class member may benefit equally under the Settlement. Regardless of the type of ticket the class member had or the class member's method of traveling to the game, the class members were permitted to make a claim under the Settlement for expenses they actually incurred related to traveling to and attending the Game. (*See* Settlement Agreement, at §§5.1.1-5.1.2.)

While Mr. Treviso's service award of $5,000 create a difference in recovery between Mr. Treviso and the unnamed class members, this award does not raise an issue of equity within the meaning of Rule 23(e)(2). That is because Mr. Treviso is not similarly situated to the other class members. 4 Newberg and Rubenstein on Class Actions § 13:56 (6th ed.). Indeed, Mr. Treviso performed additional work in his role as the class representative, *i.e.*, cooperating in discovery by responding to Defendant's written discovery, producing responsive documents, and sitting for his deposition. Thus, the service award does not unfairly enrich Mr. Treviso at the expense of other class members and treats the class members equitably. *See McKnight v. Erico Int'l Corp.*, 655 F.Supp.3d 645, 664 (N.D. Ohio 2023) (finding that settlement agreement treated class members

equitably despite service award to plaintiff because the plaintiff performed "extra work" and the service award did not "unfairly enrich the named Plaintiffs at the expense of other class members").

### B. Sufficient Notice

The Court must also consider whether the settlement class received adequate notice of the settlement. *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *4 (N.D. Ohio Aug. 12, 2019.) Specifically, Rule 23(c)(2)(B) requires all members of a class certified under Rule 23(b)(3), who can be identified through reasonable effort, to receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Further, the notice "must clearly and concisely state in plain, easily understood language" all the information specified in Rule 23(c)(2)(B)(i)-(vii). *Id.* Finally, the notice must comply with due process. *See Barnes v. Winking Lizard, Inc.*, No. 1:18-cv-952, 2019 WL 1614822, at *4 (N.D. Ohio Mar. 26, 2019).

In granting preliminary approval, the Court considered the proposed notice program and already found that it met "the requirement of Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto." (ECF No. 184, ¶16.) Thus, the remaining question is "whether the results of the notice process uncovered inadequacies." *McKnight*, 655 F.Supp.3d at 660 (citing *Arp v. Hohla & Wyss Enters., LLC,* No. 3:18-cv-119, 2020 WL 6498956, at *4 (S.D. Ohio Nov. 5, 2020). As discussed above, although the valid claims rate for the settlement class was 5.3%, this result was not the product of an ineffective notice program. Rather, it is the result of this being an approximately seven-year-old case where the parties did not have access to a direct contact list of actual, known class members.

The reach of the notice program supports this conclusion. CPT directly reached 97% of potential settlement class members for whom Defendant provided a valid e-mail address and 94.5% of those for whom Defendant provided a mailing address, and CPT also sent text messages to all 541 unique phone numbers for whom Defendant provided a phone number. (ECF No. 185-4, ¶¶ 9-13, 18.) The digital and social media campaign resulted in 5,080,887 viewable impressions on mobile and desktop devices, prompting 7,774 clicks to the settlement website. (*Id.* ¶16.) As a result of the notice program, CPT received 2,245 claim forms. (*See* ECF No. 188-1, ¶4.) Further, as stated above, the 5.34% claims rate is typical for consumer class actions. Thus, because I do not find any fatal deficiencies in notice, I find that the notice was the best practicable under the circumstances, as required under Ruel 23(c)(2)(B), and consistent with due process. Accordingly, I recommend that the Court find there was sufficient notice.

### C. Attorneys' Fees and Costs

#### 1. *Attorneys' Fees*

Plaintiff moves for attorneys' fees, costs, and expenses. There are two methods for considering what attorneys' fees should be paid: lodestar and the percentage-of-the-fund. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 497–501 (6th Cir. 2011). In this case, the percentage-of-the-fund method is applicable here, and it is the preferred method in common fund cases. *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1010 (N.D. Ohio 2016). In such cases, the attorneys' fees need only "be reasonable under the circumstances." *Van Horn*, 436 F. App'x at 498. However, a district court generally must explain its "reasons for adopting a particular methodology and the factors considered in arriving at the fee." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir.2009) (internal quotation marks omitted).

This settlement presents a common fund situation. "The most straightforward common

fund situation is that in which the defendant is ordered to pay—or agrees to pay through a settlement—a set amount of money to a group of litigants. The lump sum that the defendant pays constitutes the common fund." Newburg on Class Actions § 15:56 (5th ed. 2022). Here, the settlement agreement requires Defendant to pay $750,000 into a fund that will then be used to distribute funds to class members with valid claims, along with attorneys' fees, litigation costs, claims and settlement administration costs, the class representative service award, and payments to the Stark County Domestic Violence Project, a charitable institution. (Settlement Agreement, at §§ 3.1, 3.2, 8.1.1, and 8.1.2.) This is a non-reversionary fund because Defendants do not receive a return of the funds if the class members do not make claims for the full amount made available to them or the Court. Rather, the agreement directs that any such unclaimed or unawarded funds must be paid out directly by the claims administrator to Stark County Domestic Violence Project. (Settlement Agreement, at §§ 3.1.1., 3.1.3, 3.1.4, 8.1.2, 8.2.2.) Thus, this settlement is a common fund.

In calculating a fee award as a percentage of the common fund, courts consider the ratio between attorneys' fees and the benefit to the class. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). Courts enjoy discretion to define the "total class benefit based on each case's circumstances." *Id.* at 286. In this case, Plaintiff seeks 25 percent of the $750,000 common fund benefit: $187,500. This ratio, below one-third, is within the ordinary attorney's fees range. *See In re Polyurethane Foam Antitrust Litig.*, 168 F.Supp.3d 985, 1013 (N.D. Ohio 2016) ("[T]wenty-five percent has traditionally been the benchmark standard [for percentage-of-the-fund fee awards], with the ordinary range for attorney's fees between 20-30%." (internal quotation marks and text modifications omitted)); *Johnson v. Midwest Logistics Systems, Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) ("[E]mpirical studies

show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.") (quoting 4 Newberg on Class Actions § 14.6 (4th ed.)); *In re Southeastern Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155387, at *3 (E.D. Tenn. May 7, 2013) (approving 33% attorneys' fees award [totaling $52.9 million] in common fund settlement and noting that "the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit").

In determining the appropriateness of the requested attorneys' fees, courts often consider: "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides." *Gascho*, 822 F.3d 269, 287 (6th Cir. 2016).

Here, class counsel's work achieved valuable benefits for the class. Under the settlement, the class members are entitled to reimbursement for their actual ticket cost to attend the Hall of Fame game, as well as nearly all their expenses to attend the game. This includes two nights' hotel/lodging, airfare, ground transportation, and parking. The compensation that the class members will receive exceeds the compensation that was available under Defendant's 2016 voluntary reimbursement program. Class counsel even negotiated an Option B claim to allow class members who no longer had documented proof of their expenditures to claim a cash payment of $300 and the face value and fees paid for their tickets. And class counsel negotiated provisions to preclude the return of any unclaimed or unawarded funds from the common benefit fund. As discussed above, the remaining funds of approximately $283,000 will be donated to the Stark County Domestic Violence Project.

The claim rate of 5.34% does not warrant penalizing counsel. As I pointed out above, this claims rate is typical for consumer class actions. Further, it is doubtful that any alternative notice method could have improved the claim rate. Even though class members will not end up making claims to the full amount of the common fund benefit made available to them, the unawarded amounts will be paid to the *cy pres* beneficiary.

Courts have approved attorney fees in similar situations. For example, in *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 347 (6th Cir. 2009), city residents brought a class action against a steel mill owner alleging nuisance in connection with air pollution generated by the mill. The district court approved a class settlement that required the defendant to pay $4.45 million, which included $1.335 million in attorneys' fees (30 percent), $622,279 in costs, and with any residual unclaimed or unawarded amounts to be paid to local public schools. As a result of this class settlement, $1.21 million went to claimants and $1.28 million went to schools.

On appeal, objectors argued the 30 percent fee award was too high because it "exceed[ed] the recovery of the Class by over $100,000.000" *Id.* at 352. The Sixth Circuit in *Moulton* rejected this argument and held that the objectors' estimate was "wrong" because they "focus on the amount *claimed* rather than the amount *allocated*." *Id.* (emphasis in original). The Sixth Circuit acknowledged that claimants would receive, in aggregate, less than class counsel. *Id.* But the *Moulton* court explained "that is because just 4,026 class members submitted claims. Except for fees and costs, class members had the first shot at the settlement proceeds—nearly $2.5 million by our estimate—which exceed the amount paid to Class Counsel by some measure." *Id.* The Sixth Circuit thus concluded that the mere fact "the public schools [the beneficiaries of the unclaimed residue of the fund] will receive $1.28 million in unclaimed funds does not reflect on the settlement's fairness." *Id.*; *see also Rikos v. Proctor & Gamble Co.*, No. 1:11-CV-226, 2018

15

WL 2009681, at *12 (S.D. Ohio Apr. 30, 2018) (rejecting the objector's argument to exclude payment towards digestive health research, education, and intellectual property development (DHIC) from value of benefit because "[i]n any event, even if the DHIC were a *cy pres* distribution, its value would be properly included in the Settlement because it confers a benefit on all Settlement Class members by addressing digestive health.").

Thus, class counsel correctly argue that the focus here should be on the amount allocated rather than the funds claimed. *Gokare v. Fed. Express Corp.*, No. 2:11-CV-2131-JTF-CGC, 2013 WL 12094887, at *5 (W.D. Tenn. Nov. 22, 2013) ("The Court further finds persuasive the reasoning of Circuit Courts that have held that it is an abuse of discretion for a court to base a percentage-of-the-fund award on the amount claimed by class members rather than the total amount of a common fund.")

Next, class counsel undertook this action on a contingent fee basis, incurring substantial costs of $71,476.46, with no assurance that that they would recover anything. Also, both class counsel have extensive trial and complex litigation experience, including in class actions. (ECF No. 185-2, ¶¶2-6; ECF No. 185-3, ¶¶2-3.) Moreover, this case was complex. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373 (S.D. Ohio Oct. 5, 2006) (citation omitted) ("In general, '[m]ost class actions are inherently complex…'"). That is because there was "complexity with regards to how the damages phase would be structured and handled by the Court." (ECF No. 185-1, PageID#3552.) And "[f]ailing to fully compensate class counsel for the excellent work done and the various substantial risks taken would undermine society's interest in the private litigation of [consumer protection] cases." *Southeastern Milk*, 2013 WL 2155387, at *5.

Finally, a lodestar cross-check of the attorneys' fees requested supports a finding that the requested attorney's fees are appropriate and reasonable. The requested $187,500 is less than

16

what class counsel would be able to recover under a lodestar calculation. Indeed, the total lodestar would be $381,590. (ECF No. 185-2, ¶30.) Based on the amount of work class counsel put into this case, their request for $187,500 results in a multiplier of 0.49—a negative multiplier that would cut half of the time counsel spent litigating this matter (*Id.*) Thus, the requested attorney's fees (25% of the total benefits) is reasonable and appropriate. Accordingly, I recommend that the Court approve the payment of attorney's fees.

### 2. *Settlement Administration Costs and Out-of-Pocket Expenses*

Class counsel ask this Court to approve payment of $71,476.46 in litigation costs and expenses. (ECF No. 185-1, PageID#3555.) Class counsel allege that the $71,476.46 in litigation costs and expenses includes the following: (1) $60,674.44 in expenses to CPT Group for giving notice to class members of class certification and of the trial in this matter; (2) $1,833.33 in private mediation fees; (3) $5,688.58 in court reporter fees; (4) $925.99 in miscellaneous costs (e.g., messenger and courier services, etc.); and (5) $2,354.12 in travel costs for Mr. Ibrahim to travel to Cleveland for the 2022 private mediation and 2023 settlement conference. (ECF No. 185-2, ¶31; ECF No. 185-3, ¶8.) Class counsel also asks this Court to approve a $100,000 payment to CPT for settlement and administration costs. (ECF No. 185, ¶13; *see* ECF No. 185-4, ¶30.)

Under the common fund doctrine, class counsel are generally entitled to reimbursement of all reasonable necessary expenses, including class-notice costs, incurred in the prosecution and settlement of claims. *Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019); *Todd S. Elwet, Inc., DC v. All. Healthcare Servs., Inc.*, No. 3:15-CV-2673, 2018 WL 4539287, at *5 (N.D. Ohio Sept. 21, 2018); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534-35 (E.D. Mich. 2003). Here, I find these expenses were reasonable and

necessary in connection with the litigating and resolving this case and are therefore reimbursable. Accordingly, I recommend that the Court approve these payments.

### 3. Class Representative Award

The Parties request that the Court approve a service award of $5,000 to Mr. Treviso. (ECF No. 185-1, PageID#3555.) Service awards are "awards to class representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). They "encourage[e] members of a class to become class representatives and reward[] individual efforts." *Id.* The Sixth Circuit has neither approved nor disapproved the practice of service awards to class representatives. *In re Southern Ohio Corr. Facility*, 24 F. App'x 520, 526 (6th Cir. 2001); *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2015). The Sixth Circuit, however, has recognized that "there may be circumstances where incentive awards are appropriate." *Hadix*, 322 F.3d at 898. Accordingly, courts have authorized service awards based on class representatives' procured benefits, financial risks, and time expended. *See Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016).

An incentive award is appropriate here because the Parties agreed in the Settlement to service awards and there have been no objections to such an award. *See McKnight*, 655 F.Supp.3d at 669 (approving incentive awards where "parties agreed in the settlement to service awards, and no person objected"); *Waters v. Pizza to You,* LLC, No. 3:19-cv-372, 2022 WL 3048376, at *9 (S.D. Ohio Aug. 2, 2022) (same). Here, as I previously pointed out, Mr. Treviso performed extra work as a class representative, *i.e.*, cooperating in discovery by responding to Defendant's written discovery, producing responsive documents, and sitting for his deposition. He was even prepared to be a witness if this matter proceeded to trial. Accordingly, because of the nature of Mr. Treviso's involvement, I recommend that the Court approve the requested service award.

*Lonardo v. Travelers Indem. Co.*, 706 F.Supp.2d 766, 785 (6th Cir. 2010) ("Courts within the Sixth Circuit…recognize that, in common fund cases, where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled by virtue of class membership alone."). Accordingly, I recommend that the Court approve the payment.

IV. **RECOMMENDATION**

Based on the foregoing, I RECOMMEND the Court GRANT Plaintiff's Motion for Final Approval of the Class Action Settlement, and for Attorneys' Fees, Costs, and Service Award (ECF No. 185) and adopt and issue Plaintiff's Proposed Order and Final Judgment. (ECF No. 185-5.)

Dated: February 12, 2024

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

V. **NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).